OPINION OF THE COURT
Gabrielli, J.
Defendant Thomas Conyers was tried before a jury and convicted of several criminal counts in connection with the armed robbery of Marion Dantzler and Grace Johnson. The Appellate Division, however, reversed the conviction after concluding that defendant had been deprived of his right to a fair trial (65 AD2d 437). We affirmed the decision of the Appellate Division, in part because, in our view, defendant’s right to due process of law had been violated by the District Attorney’s use of his postarrest silence to impeach his testimony at trial (49 NY2d 174). The People then petitioned the Supreme Court for a writ of certiorari, seeking a further review of our determination upon Federal constitutional grounds.
While the People’s petition was pending, the Supreme Court handed down its decision in Jenkins v Anderson (447 US 231). In that case, the court held that the use of a defendant’s prearrest silence for impeachment purposes does not offend any of the guarantees contained in the United States Constitution. Shortly after Jenkins was decided, the court granted the People’s petition for certiorari in Conyers I, vacated our order and remanded the case to our court for further consideration in light of Jenkins (New York v Conyers, 449 US 809), presum *457 ably because our analysis in Conyers I touched upon some of the same constitutional issues that were considered in that case. Upon reconsideration, we now adhere to our prior ruling and hold that, absent circumstances not here present, our State rules of evidence preclude the use of a defendant’s pretrial silence to impeach his trial testimony. Inasmuch as our present holding is founded upon familiar principles of State evidentiary law, we do not find it necessary to consider whether the use of a defendant’s postarrest silence for impeachment purposes is permissible under the constitutional principles articulated in Jenkins or whether the due process clause of our State Constitution (NY Const, art I, § 6) precludes the use of such evidence to impeach a defendant’s trial testimony.
The controversy in Conyers I arose out of the defendant’s attempts to place an exculpatory version of events before the jury through his own trial testimony. In an effort to refute the testimony of the two alleged victims, Dantzler and Johnson, that defendant had robbed them at gunpoint after accosting them on the street and forcing them into a nearby apartment building, defendant took the witness stand and testified that he had merely been attempting to collect a gambling debt from Dantzler in the latter’s apartment when Dantzler drew a gun. Defendant, according to his own testimony, managed to wrest the gun from Dantzler’s control and escape from the apartment with the gun and a pouch containing the proceeds of his bet after he and his accomplice, Saunders,[1] subdued Dantzler and bound his hands. Dantzler, however, was somehow able to free himself from his bonds in time to pursue defendant and Saunders out onto the street. The ensuing chase was interrupted,, according to defendant, when a police officer intervened and placed defendant and Saunders under arrest.
Seeking to portray defendant’s version of events as a recent fabrication, the District Attorney, over timely objection by defense counsel, questioned defendant about his fail *458 ure to explain the situation to the arresting officer immediately upon his arrest. Reference to defendant’s postarrest silence was also made during the District Attorney’s summation to the jury. It was these references to defendant’s postarrest failure to speak that ultimately formed the basis of our ruling upholding the reversal of Conyers’ conviction.
As is evident from our opinion in Conyers I, our decision in that case, although based upon constitutional grounds, was heavily influenced by our conviction that evidence of an individual’s pretrial failure to speak when confronted by law enforcement officials is of extremely limited probative worth (People v Conyers, 49 NY2d 174, 181-182, supra; accord Doyle v Ohio, 426 US 610, 617-618, n 8). As noted in our earlier decision, the individual’s silence in such circumstances may simply be attributable to his awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later be used against him at trial (People v Rutigliano, 261 NY 103, 107; accord United States v Hale, 422 US 171, 176-177). Alternatively, the individual may refrain from speaking because he believes that efforts to exonerate himself under the circumstances would be futile (People v Dawson, 50 NY2d 311, 322; People v Conyers, supra, at pp 181-182). Finally, it is a lamentable but undeniable fact of modern society that some of our citizens harbor a mistrust for law enforcement authority which leads them to shun contact with the police even when the avoidance of contact is not in their own best interest (see People v Conyers, supra, at p 182). Such individuals may refrain from speaking to law enforcement officials not because they are guilty of some crime, but rather because they are simply fearful of coming into contact with those whom they regard as antagonists. In short, although a defendant’s failure to come forward with an exculpatory version of events prior to trial may reflect negatively upon the veracity of his trial testimony, his prior silence also may be attributable to a variety of innocent circumstances that are completely unrelated to the truth or falsity of his testimony. Accordingly, evidence of a defendant’s pretrial silence must be regarded as having minimal probative significance and as having a correspond *459 ingly low potential for advancing the truth-finding process even when offered solely for purposes of impeachment.
On the other hand, the risk of prejudice is substantial whenever the prosecution attempts to impeach a defendant’s trial testimony by questioning him about his prior failure to come forward with an exculpatory version of events. Jurors, who are no„t necessarily sensitive to the wide variety of alternative explanations for a defendant’s pretrial silence, may be prone to construe such silence as an admission and, as a consequence, may draw an unwarranted inference of guilt. Because evidence of a defendant’s pretrial silence may have a disproportionate impact upon the minds of the jurors and because the potential for prejudice inherent in such evidence outweighs its marginal probative worth, we conclude that the use of such evidence for impeachment purposes cannot be justified in the absence of unusual circumstances (accord United States v Hale, 422 US 171, supra; cf. People v Rothschild, 35 NY2d 355).[2]
We note that our decision today to curtail the use of a particular category of evidence on the ground that its potential for prejudice outweighs its probative worth is far from unprecedented in our case law. In People v Molineux *460 (168 NY 264), for example, we held that evidence of a defendant’s prior criminal acts may not be used as part of the People’s direct case to establish the defendant’s propensity to commit the crime charged. Although we recognized that such evidence is “marginally relevant to the question of the accused’s guilt”, we concluded that it should be excluded as a matter of judicial policy because “its probative value is * * * outweighed by its potential for prejudice” (People v Santarelli, 49 NY2d 241, 247; accord People v Allweiss, 48 NY2d 40, 46). Similarly, we held in People v Sandoval (34 NY2d 371) that evidence of a defendant’s prior criminal acts should not be admitted for impeachment purposes unless the trial court determines in the exercise of its discretion that the evidence “will have material probative value on the issue of defendant’s credibility, veracity or honesty” (id., at p 376). Once again, our judicially created rule of exclusion was premised upon the familiar standard “whether the prejudicial effect * * * outweighs the probative worth of the evidence” on the issue for which it is being admitted (id.).
Like the Molineux and the Sandoval rules, the rule announced in our decision today represents a simple recognition of our judicial responsibility to formulate rules of evidence to protect the integrity of the truth-finding process. Evidence that is highly prejudicial but of low probative worth has traditionally been excluded from criminal trials because it carries with it a grave potential for distorting the search for truth which is at the heart of our adversary system. As the Supreme Court has succinctly observed: “When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out” (Shepard v United States, 290 US 96, 104, quoted in United States v Hale, 422 US 171, 180, supra). Here, as previously noted, the value of defendant Conyers’ silence as impeachment evidence was more than outweighed by the danger of prejudice and confusion in the minds of the jurors. Hence, it was error for the trial court to permit such evidence to be placed before the jury.
Accordingly, upon reargument following remand by the Supreme Court of the United States, this court’s prior de *461 termination affirming the order of the Appellate Division should be adhered to.

. Defendant’s alleged accomplice, Saunders, was also convicted of having robbed Dantzler and Johnson. Saunders’ conviction was affirmed by the Appellate Division (63 AD2d 868), and his application for permission to appeal to this court was subsequently denied (44 NY2d 956).

. It is this grave danger of prejudice that distinguishes the situation in the instant case from the situation presented in People v Dawson (50 NY2d 311, supra), in which we held that a nonparty witness’ failure to come forward with exculpatory information prior to trial may be used to impeach the witness’ trial testimony under certain carefully controlled conditions. Although we recognized in Dawson that evidence of a nonparty witness’ pretrial silence is of extremely limited probative worth, we declined to adopt a per se rule of exclusion, holding instead that such evidence may he used as long as the utmost caution is exercised in order to ensure that the defendant is not deprived of a fair trial (id., at pp 321-324). The need for caution, however, is substantially greater in a case where the prosecution seeks to impeach the testimony of the defendant through the use of his prior silence. While the risk in the case of a nonparty defense witness is of indirect prejudice only, the risk in the case of a defendant who has been silent is of direct prejudice. In the case of a nonparty defense witness, the hazard is merely one of unwarranted doubt in the minds of the jurors that his testimony is truthful. In the case of a defendant, however, the hazard is the far more serious danger that the jury will draw the unjustified inference that the defendant’s pretrial silence was the equivalent of an admission of guilt. It is because of this substantially greater potential for prejudice when it is the defendant whose testimony is to be impeached by his own pretrial silence that we reach a different conclusion in this case than that reached in Dawson.