■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FELIX DIAZ, Appellant. — Judgments, Supreme Court, Bronx County (Ivan Warner, J.), rendered on December 7, 1981, unanimously affirmed. Concur — Fein, Milonas, Kassal and Alexander, JJ.

Carro, J. P., concurs, in a memorandum as follows: Around 9 P.M. on New Year's Eve Felix Diaz shot Luis Chavana in the abdomen, causing his death. At trial defendant took the stand and stated that he had originally encountered the deceased when Chavana had clumsily stepped on his foot, in a local grocery store. Some pushing and words were exchanged, but nothing further. A bit later, on a nearby street corner, defendant was standing talking to a former girlfriend when Chavana came up, cursing and yelling, "who has the fucking pela [heroin]?" Although the couple ignored Chavana for a few minutes, when the man reached into his coat pocket defendant pulled out a .38 Smith & Wesson and shot once. Mr. Diaz claimed that he saw a "bulge" in his victim's coat, and further testified that his pistol was broken, so that when he drew the gun and began to cock it, the hammer slipped and the weapon discharged accidentally. However, the ballistics expert testified that the gun was not broken, was fully operable and possessed a mechanism preventing discharge unless the trigger was pulled. The defense presented no ballistics expert of their own to rebut this, even though given the opportunity to do so midway through the trial. Thus, I agree that the conviction should be affirmed because the evidence of appellant's guilt was clearly and convincingly presented, with ample justification for the jury's conclusion that Mr. Diaz intended to cause serious physical injury. (The jury, incidentally, inspected the weapon through its foreman.) What is troubling about this case, and what should not be given the imprimatur of approval by our affirmance of the conviction, are the numerous ways in which the Assistant District Attorney,

with the acquiescence of the trial court, violated the principles enunciated in *People v Conyers* ([*Conyers II*], 52 NY2d 454), merely to attack defendant's credibility. The lower court's reliance on the prosecutor's citation of *Harris v New York* (401 US 222) completely misses the point that in this State the evidentiary rules bar the introduction of highly prejudicial evidence when its probative worth is so scant. (See *People v Conyers,* 52 NY2d 454, 458, *supra;* compare *People v Stanard,* 32 NY2d 143, 148 ["Truly prejudicial evidence cannot be erased from a juror's mind by the court's instructions"].) Up until the time when the prosecutor began his cross-examination of Mr. Diaz, the State's case was very strong. What followed was needless excess, "gilding the lily." At a *Huntley* hearing the court had ruled that statements allegedly made by the defendant at the time of his arrest — three months after the incident — were not admissible because the police were, or should have been, aware that defendant had already secured a lawyer in relation to a pending robbery charge.[1] The court thus never had to rule on whether or not *Miranda* warnings had been given prior to the alleged making of the statements. Furthermore, unlike the statement taken from the prime witness for the People, the former girlfriend of the defendant, this alleged confession was not signed by Mr. Diaz nor even alleged to be in his own words. Rather, it was a summary of the events prepared by the detective, with only the words, "He says he didn't want to shoot the boy", in quotes. Moreover, the voluntary disclosure form indicated the detective's proposed testimony, stating: "Admitted shooting deceased. Alleges he believed the deceased was reaching for a weapon." Given all this, the prosecutor still maintained there was an "omission by silence" where the detective's summary did not record defendant's claim that he saw a bulge, and that this constituted an inconsistency pertinent to Mr. Diaz' credibility. Defense counsel objected cogently and quite strenuously, going over each piece of the story and showing that the Assistant District Attorney could point to no material inconsistency. But the court did not even request an offer of proof from the prosecutor. "[Defense Counsel]: But I believe it's improper to go into this because it doesn't show the prior inconsistent statement at this particular point in time. He hasn't demonstrated a prior inconsistent statement. THE COURT: Well, he says he knows. He's got a statement that says there's [*sic*] nothing in there about a bulge." The court not only allowed the prosecutor to question the defendant about his "conversation" with the detective, but worse, the People were allowed to call the detective on rebuttal, and introduce as evidence Wilson's alleged summary of the interview. Needless to say, no material inconsistency was shown, but the jury was exposed to cumulative testimony as to guilt that had already been suppressed, with the added bias of the prosecutor's emphasis in argument that some inconsistencies were present. This, coupled with the court's elongated charge on defendant's credibility and the "truth" of his alleged statement, gives the impression, in reading the transcript, of a directive to find an inconsistency. This is not a case where defendant "on his own ventured to communicate devastatingly incriminating information" (*People v Savage,* 50 NY2d 673, 679), nor did defendant "testif[y] that he gave the police a complete narrative of the occurrence" (*Hoberman v Lane,* 85 AD2d 595). Rather, there were simply no "logically significant omissions" justifying this extensive indulgence of the prosecutor. (Cf. *People v Savage, supra,* at p 682.) The detective's narrative was, instead, fully consistent with defendant's trial testimony and the omission of details from the officer's summary should not have been harped upon. As the Court of Appeals

---

1. Indeed, the detective testified that the first question he put to Mr. Diaz was whether he knew why he'd been brought into the station, to which defendant answered yes, because of the robbery. The warrant for that charge had, in fact, already been executed, although a bench warrant was outstanding.

has reaffirmed, "evidence of an individual's pretrial failure to speak when confronted by law enforcement officials is of extremely limited probative worth" (*People v Conyers, supra,* at p 458) and not a proper predicate for allowing in evidence that which, by the very fact of its having been suppressed, is prejudicial. Secondly, the court allowed and, at one point, directed the prosecutor to use extrinsic proof to impeach defendant on the collateral issue of his employment, thereby violating another rule of evidence. Mr. Diaz had testified that he was a gypsy cab driver and he had actually been arrested in his gypsy cab. The Assistant District Attorney asked him whether, following his arrest, he had told a pre-trial services interviewer that he was unemployed. The prosecutor's offer of proof consisted of the interview report which indicated that Mr. Diaz had been unemployed for the past six months, and the Assistant District Attorney explained that he didn't want to put the report in evidence, but only show a prior inconsistent statement. Although defense counsel objected that the prosecutor was bound by the defendant's denial, the court overruled the objection and directed the prosecutor to produce the interviewer in the event Mr. Diaz made a denial. In fact, defendant stated — each of the 10 times the question was asked of him — that he could not remember.[2] Not content, the People called the *supervisor* of the pre-trial services interviewer for a general statement of how such interviews are conducted.[3] This whole facet of the trial was improper (see *People v De Garmo,* 179 NY 130, 135), as was the prosecutor's argument upon the point in summation. (Cf. *People v Orse,* 91 AD2d 1003, 1004; *People v Goggins,* 64 AD2d 717; and see *People v Stewart,* 92 AD2d 226, 231 ["Rarely has this court seen a case where the prosecutor has allowed himself or herself to be so led astray in the zeal of obtaining a verdict."].) Lastly, the court erred in refusing to give the standard charge, that the testimony of police officers should not be afforded any greater weight or credibility than other witnesses, while specifically charging the jury that the defendant was an interested witness as a matter of law. (Compare *People v Gadsden,* 80 AD2d 508.) In the face of all of these egregious errors it is ironic that defendant, in a sense, suffers from having had very able counsel. That attorney gave extraordinarily able advocacy, and I believe the jury arrived at a fair verdict, despite the prejudice, because of him. I have only "here recounted in detail instances of the prosecut[orial] misconduct in the hope that our disfavor will be noted and that those charged with the duty of participating as advocates in criminal trials will approach their responsibility in an appropriate manner." (*People v Stewart, supra,* p 231 [*Per Curiam*].) As was so aptly stated by the United States Supreme Court, in *Brady v Maryland* (373 US 83, 87), "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."

---

2. When the court inquired of Mr. Diaz, he replied, had he told the interviewer that, that would have been "error".

3. The interview report then was admitted into evidence.