■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND BROCKINGTON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Zelman, J.), rendered August 17, 1982, convicting him of reckless endangerment in the first degree (two counts), grand larceny in the second degree, criminal possession of stolen property in the first degree, and possession of burglar's tools, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The evidence at trial revealed that after the defendant was seen in a stolen Cadillac by two police officers and stopped, he fired a gunshot at the officers and sped off. A chase ensued, and the defendant was eventually arrested. He now contends that references in the officers' testimony to uncharged crimes committed by him deprived him of a fair trial. Specifically, he points to testimony by Detective Cammarata and Officer Balcuk that they were assigned to the Queens Robbery Squad investigating "driveway robberies" when they received a call from the Nassau Robbery Squad with respect to the Cadillac in question; testimony by Captain Hennesy that he supervised the Robbery Squads in Brooklyn and Queens and responded to the scene of the stolen Cadillac in connection with one of the investigations that he was overseeing; testimony by Cammarata that the defendant told him that he had "used the car * * * to do two robberies out in Nassau County"; and the prosecutor's summation comment that there was a stipulation that Officer Sirianni would have testified that at 3:30 P.M. on the date of the incident the Nassau Robbery Squad informed the Queens Robbery Squad that the Cadillac "was reported and wanted". We disagree with the defendant's contention.

It should first be pointed out that the defendant agreed to the above stipulation and should not be able to now object to this evidence. Moreover, by so stipulating, the defendant informed the jury that members of the robbery squad were involved in the investigation. Therefore, his argument on appeal that he was prejudiced by certain police officers identifying themselves as members of the Robbery Squad is unpersuasive. In any event, such testimony was relevant and necessary to the People's case in view of defense counsel's argument in his opening statement that the officers' encounter with the defendant was somehow racially motivated and that they fabricated the shooting incident because the defendant was black. This argument, coupled with testimony later elicited on cross-examination and elsewhere that the officers' encounter with the defendant occurred at 5:00 P.M. while the complainant did not report her car stolen until 6:00 P.M. on that day, made it incumbent upon the People to explain that the police had stopped the defendant before the car had been reported stolen because the car was wanted in an unrelated robbery investigation. Thus, such evidence was admissible not only to "complete the narrative" of events leading to the shooting and the defendant's arrest (see, People v Gines, 36 NY2d 932), but also for its probative value in explaining the

officers' conduct, which became a relevant issue in light of defense counsel's racial motivation argument *(see, People v Fay,* 85 AD2d 512).

While it is true that Detective Cammarata's testimony that the defendant confessed to participating in two unrelated robberies cannot be justified, we believe that the trial court's prompt and emphatic curative instruction to the jury to disregard this testimony, coupled with the overwhelming evidence of defendant's guilt, rendered any error in this regard harmless *(see, People v Alvarez,* 98 AD2d 777; *People v Sorrentini,* 26 AD2d 827).

The prosecutor's summation remark was an accurate reference to the stipulation agreed to by the defendant himself, and thus was proper as within " 'the four corners of the evidence' " *(see, People v Ashwal,* 39 NY2d 105, 109; *Williams v Brooklyn El. R. R. Co.,* 126 NY 96, 103).

The defendant also argues that testimony by police officers about his postarrest silence regarding the shooting incident violated his privilege against self-incrimination *(see, People v Conyers,* 52 NY2d 454). We disagree. The record reveals that although the defendant at first agreed to talk about the stolen car but refused to talk about the shooting incident, he then denied having a gun and denied shooting at the officers. Clearly, by such express denials the defendant did not invoke his right to remain silent. *People v Conyers (supra)* does not apply and the police officers could properly testify about such denials *(see, People v Mayers,* 100 AD2d 558).

We have reviewed the defendant's other claims and find them to be without merit. Thompson, J. P., Niehoff, Kunzeman and Sullivan, JJ., concur.