■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLAYTON B. BARBER, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered June 1, 1987, upon a verdict convicting defendant of the crime of burglary in the first degree.

Norval Bennett, who at the time admittedly was an alcoholic, awoke at about 1:00 A.M. on March 22, 1986, to find his face bleeding. He got up and walked to his kitchen where he found defendant. There is some disagreement about what conversation then took place, but both agree that defendant offered to call a rescue unit to attend to the gash in Bennett's head and that in response to Bennett's demand to know what defendant was doing there the latter reported seeing a large man coming out of Bennett's driveway. Investigator Edward T. Hamel found two of Bennett's outside doors locked, a kitchen door unlocked, and a cellar door ajar. He also discovered a piece of firewood behind the couch on which Bennett had been sleeping; although it was presented as the instrument with which Bennett had been struck, there was no blood or skin on it. After Bennett identified defendant for the State Police as the man who had been in his home that night, the latter was arrested and charged with first degree burglary. Defendant apparently spoke with Hamel about the incident but the content of that interview is not in the record.

At trial, defendant testified that on the night of the burglary, he and his wife had been playing cards with Bruce De Shane and Fay Bateman when Howard Bartlett arrived at his home and spoke with De Shane; defendant overheard the conversation. After Bartlett left and, shortly thereafter, De Shane and Bateman left, defendant, gathering from Bartlett's conversation that Bartlett planned to burglarize Bennett's residence, purportedly attempted to find telephone numbers for Bennett and the nearby State Police substation, but neither was listed. Defendant thereupon decided to go to Bennett's residence where he observed Bartlett running down Bennett's driveway. Defendant then entered Bennett's kitchen, aided Bennett, and offered to obtain help from a community rescue squad to further assist him with his injured head. According to defendant, Bennett attributed the injury to falling off the couch.

On cross-examination, the prosecution, without defense objection, vigorously questioned defendant regarding the fact that he had not previously identified Bartlett as the person he saw leaving Bennett's home in statements made to Bennett and Hamel. Defendant now appeals his conviction arguing, in part, that the prosecutor improperly used defendant's pretrial silences to impeach him, that such questioning was inherently unfair and denied him a fair trial. Although this issue has not been preserved for review, we consider it in the interest of justice, given the equivocal character of the evidence against defendant (see, CPL 470.15 [3] [c]; [6] [a]).

Absent unusual circumstances, the prosecution is prohibited from using a defendant's pretrial silence to impeach his trial testimony (People v Conyers, 52 NY2d 454, 457; see, Doyle v Ohio, 426 US 610, 617). In the instant case, the prosecution sought to show by its questioning that defendant's sighting of another person at Bennett's house was a fabrication because otherwise he would have provided Bartlett's name and the basis for his awareness of Bartlett's involvement to the police or Bennett. However, defendant's motive for remaining silent as to Bartlett's identity is "insolubly ambiguous", for it may have been fear of retribution; a desire not to betray an acquaintance coupled with a recognition that, being a convicted felon, efforts to explain his presence in Bennett's home would prove futile; or a partial attempt to exercise his right to remain silent (see, People v Conyers, supra, at 458). In this latter respect it is worth noting that defendant did not necessarily waive his right to remain silent by speaking with the State Police investigator (see, People v Santiago, 119 AD2d

775, 776, *lv denied* 68 NY2d 672), and since the details of defendant's interaction with the police are not contained in the record, there is no reason to be indifferent to the possibility that he withheld information pending advice from his attorney as is his constitutional right.

The case at hand is to be distinguished from *People v Savage* (50 NY2d 673, *cert denied* 449 US 1016), for there the defendant made an incriminating statement to police and only raised an exculpatory defense at trial, thus making the inference of recent fabrication strong. By contrast, defendant herein maintained his innocence from the very beginning and has throughout asserted his sighting of another man as his reason for being in Bennett's home. Furthermore, as already noted, it was not "unnatural" to omit Bartlett's identity from his early volunteered statements *(cf., supra,* at 679). In light of the crucial role defendant's credibility played in this case and the fact that the evidence of defendant's guilt is far from overwhelming, the People's error cannot be deemed harmless *(see, People v Williams,* 67 AD2d 613).

Defendant's remaining arguments to the extent they have been preserved for review have been examined and found lacking in merit.

Judgment reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of St. Lawrence County for a new trial. Casey, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.