STATE OF CONNECTICUT *v.* ALBERT DANIELS
(6407)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 4, 1988—decision released April 11, 1989

*Joette Katz,* public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant was convicted, after a jury trial, of the crime of sexual assault in the first degree, General Statutes § 53a-70.[1] The defendant claims that the trial court erred (1) in admitting as an admission by silence evidence of the defendant's failure to respond to accusatory statements directed to him by the victim, (2) in failing to instruct the jury that, in order to find the defendant guilty of sexual assault in the first degree under § 53a-70 (a), it had to agree unanimously on which statutorily designated "method of compulsion" the defendant had employed to compel the victim to engage in sexual intercourse with him, and (3) in permitting the prosecutor to make improper

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

remarks during closing argument, in violation of the defendant's constitutional rights to a fair trial and due process.

The jury could reasonably have found the following facts. During the evening of September 22, 1986, the defendant and Doe,[2] a male companion, were at the Ashley Cafe in Hartford. At approximately 10:40 p.m., Doe invited the victim, who was alone, to join them at their table. The victim accepted the invitation and joined them for a drink. Sometime later, the defendant and Doe informed the victim that they were leaving the bar to obtain marihuana on Magnolia Street and asked her if she wanted to accompany them. The victim agreed to go along. The two men and the victim left the Ashley Cafe. While walking in an area located near the Vine Street School, Doe asked the victim to engage in sexual intercourse with him. The victim refused and turned to walk away. Doe then grabbed her around the neck, pulled her to the ground and dragged her behind the school. The victim resisted, screaming and struggling, and struck Doe. Doe hit the victim in the jaw and threatened to kill her if she did not stop struggling. He reached into his pocket, a gesture causing the victim to believe he had a weapon. The victim, fearing for her life, ceased resisting but continued to scream. Doe proceeded to engage in sexual intercourse with the victim while the defendant stood nearby, smoking a cigarette and watching. Doe then ordered the victim to remain on the ground and told the defendant to "take his turn." The victim, crying, complied with Doe's order to remain on the ground. The defendant then engaged in sexual intercourse with the victim. The police arrived at the scene shortly thereafter, and the defendant was subsequently arrested and

---

[2] "Doe" is a pseudonym. Both the victim and the defendant testified that they did not know the man's name, and he has never been identified. At trial, the parties referred to this individual as "Mr. X."

charged with sexual assault in the first degree; General Statutes § 53a-70 (a); conspiracy to commit sexual assault in the first degree; General Statutes §§ 53a-48 (a) and 53a-70 (a); and unlawful restraint in the first degree. General Statutes§ 53a-95 (a).[3]

In his first claim of error, the defendant contends that the trial court erred in overruling his objection that the testimony of a state's witness was hearsay and in admitting that testimony as evidence of an "admission by silence" by the defendant. The following facts are relevant to this claim. During its case-in-chief, the state called Officer Cheryl Canino of the Hartford police department as a witness. Canino testified that, during the early morning hours of September 23, 1986, she was dispatched to the rear of the Vine Street School to investigate a report of a woman screaming. Canino testified that, upon her arrival at the school, she observed a male and a female standing some distance away and began to approach them. In response to a question by the prosecutor, Canino began to testify that, as she approached the two individuals, she heard the female speaking to the male. The defendant interrupted, objecting that the testimony was hearsay. In an offer of proof conducted outside the presence of the jury, Canino testified that, as she approached the two individuals, she heard the victim repeatedly saying to the defendant, "Why did the both of you do this to me?" She further testified that the defendant did not respond to the victim's statements. The defendant argued that Canino's testimony regarding what she heard the victim say was hearsay. The state responded that Canino's testimony about the victim's statements to the defendant and the defendant's failure to reply was admissible to establish an admission by conduct. The defendant countered that the admission into evidence of testimony

---

[3] The jury acquitted the defendant of the conspiracy and unlawful restraint charges.

regarding his choice to remain silent in the face of the victim's accusations violated his rights under the fifth and fourteenth amendments to the United States constitution and his rights under the Connecticut constitution. The defendant contended that he had not been under any obligation to respond to the victim's statements "based on his fifth, sixth and fourteenth amendment [rights] and [his rights] under the state's constitution whether he was in custody or not." The court overruled the defendant's hearsay objection and ruled that Canino's testimony about the defendant's silence was admissible to show an admission by silence.

The defendant concedes on appeal that his choice to refrain from responding to the victim's accusatory statements is not protected under either the United States constitution or the Connecticut constitution.[4] He argues, however, that the trial court erred in permitting Canino to testify about his failure to respond to the victim's accusatory statements because the statements were made in the presence of a police officer and therefore the circumstances did not naturally call for him to respond.

The rule in Connecticut is that when a statement, accusatory in nature, made in the presence and hearing of an accused, is not denied or explained by him, it may be received into evidence as an admission on his part. *State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Cook,* 174 Conn. 73, 76, 381 A.2d 563 (1977); *State* v. *Yochelman,* 107 Conn. 148, 152, 139 A. 632 (1927). Evidence of silence in the

---

[4] See *Jenkins* v. *Anderson,* 447 U.S. 231, 235, 100 S. Ct. 2124, 65 L. Ed. 2d 2486 (1980); *Doyle* v. *Ohio,* 426 U.S. 610, 617–18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *State* v. *Shashaty,* 205 Conn. 39, 48–49, 529 A.2d 1308, cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988); *State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

prearrest setting may be used either as an admission or for impeachment purposes. *State* v. *Leecan,* supra. The theory underlying the rule is that the natural reaction of an innocent person to an untrue accusation is promptly to deny, contradict or otherwise object to it; 29 Am. Jur. 2d, Evidence §§ 633, 638; and that the failure of the person to contradict or reply is probative of his adoption of the assertion. *Obermeier* v. *Nielsen,* 158 Conn. 8, 11, 255 A.2d 819 (1969).

The strength of the inference that the defendant's silence imports acquiescence in the truth of an accusatory statement depends upon the circumstances surrounding the making of the statement. "Recognizing that, at its best, the doctrine of assenting silence brings about the weakest assumption known to the law"; 29 Am. Jur. 2d 692, Evidence § 638; many state courts have imposed conditions upon the introduction of evidence that an alleged admission by silence has occurred. C. McCormick, Evidence (3d Ed.) § 160. Some state courts have even barred entirely the introduction, in any criminal case, of evidence of a defendant's silence, reasoning, in part, that the inference of assent was too unreliable. See, e.g., *State* v. *Kelsey,* 201 N.W.2d 921, 927 (Iowa 1972); *Commonwealth* v. *Dravecz,* 424 Pa. 582, 227 A.2d 904 (1967). The doctrine has also been criticized by commentators. See C. Gamble, "The Tacit Admission Rule: Unreliable and Unconstitutional—A Doctrine Ripe for Abandonment," 14 Ga. L. Rev. 27 (1979); Note, "Tacit Criminal Admissions," 112 U. Pa. L. Rev. 210 (1963).

Our Supreme Court has joined other state courts in developing standards governing the admissibility of evidence of a defendant's prearrest silence in the face of accusation. The trial judge must decide, as a preliminary matter, whether proffered evidence of the defendant's silence in the face of accusation is, under the circumstances, sufficiently probative of assent by the

defendant to the accusatory statement made in his presence. See *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 315, 268 A.2d 639 (1970); *Obermeier* v. *Nielsen,* supra. The inference of assent may be made only when no other explanation is equally consistent with silence. *State* v. *Vitale,* 197 Conn. 396, 405, 497 A.2d 956 (1985); *State* v. *Harris,* 182 Conn. 220, 229, 438 A.2d 38 (1980). Relevant considerations in determining the proper explanation for an actor's silence are whether the actor heard, understood, and comprehended the statement to which he did not respond, *State* v. *Vitale,* supra, 406; whether the circumstances naturally called for a reply from him; id.; and whether there were present physical or emotional factors which render the inference of assent unreliable; *State* v. *Harris,* supra.

In reviewing the trial court's decision to admit Canino's testimony, we note that, ordinarily, the trial court's rulings on the admissibility of evidence are accorded great deference and will be disturbed on appeal only upon a showing of clear abuse of discretion. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 222, 544 A.2d 623 (1988); *State* v. *Erhardt,* 17 Conn. App. 359, 553 A.2d 188 (1989). We consider, therefore, whether the trial court could reasonably have concluded, on the basis of the evidence before it, that the fact of the defendant's silence was sufficiently probative of assent to an accusatory statement to permit its admission into evidence as an admission by silence.

At the time the trial court ruled on the admissibility of Canino's testimony, the state had presented the testimony of only one other witness, the victim. Through the testimony of Canino and the victim, evidence of the following circumstances had been presented. The victim, in a state of extreme emotional upset, asked the defendant why he and Doe had done what they did to

her.[5] At the time the victim directed this statement to the defendant, the defendant was standing near the victim.[6] Canino was approaching and was within two feet of the defendant and the victim at the time the victim was speaking,[7] and the defendant was facing Canino.[8] At the time the trial court was called upon to rule on the question before it, this evidence was uncontradicted.

---

[5] The victim testified on direct examination as follows:

"Q. And after you got up did you say anything to the Defendant?

"A. Yes.

"Q. What was that?

"A. I said to him why did you both all have to do this to me. Why did you all do this to—do it to me.

"Q. And what was your emotional state at that particular time, if you recall?

"A. I was very, very emotional."

During the offer of proof, Officer Canino testified on questioning by the prosecutor as follows:

"Q. Officer Canino, you testified that as you approached the victim who was later identified as Miss H and the Defendant Mr. Daniels you overheard the female victim say something to Mr. Daniels, is that correct?

"A. Correct.

"Q. What did you hear the victim say to Mr. Daniels as you approached them? . . .

"A: Can I continue? Why did the both of you do this to me?

"Q. Could you please say that again?

"A: Why did the both of you do this to me?

"Q. And did she say that once or more than once?

"A. She kept repeating herself."

[6] The victim testified on direct examination:

"Q. . . . Did you get up off the ground?

"A. Yes.

"Q. And did the Defendant get up off the ground?

"A. Well, yes. When the cops came we was standing up."

[7] Canino testified during the offer of proof:

"Q. How far were you from the young lady when she said this?

"A. Well, I was—I was still moving as she was saying this, so by the time that the statement was finished, the first time I'll say one to two feet."

[8] Canino testified during the offer of proof:

"Q. And when you shone—shined the flashlight or spotlight on these two parties, could you make out who they were in terms of male, female, black, white?

On this state of the record, a close question is presented. There was sufficient evidence from which the trial court could conclude that the defendant heard the victim's statement; the testimony of both the victim and Canino supports such a finding. The first question is whether the statement made by the victim was sufficiently accusatory in import to call naturally for a response from the defendant. The incriminating content of a statement is to be considered in determining whether an ordinary person would deny it. *United States* v. *Schulman,* 624 F.2d 384 (2d Cir. 1980); *United States* v. *Flecha,* 539 F.2d 874 (2d. Cir. 1976); *State* v. *Harris,* supra. On one hand, the statement "why did you do this to me" is ambiguous in that it does not by terms identify any wrongful act. An individual making such a statement could as well be referring, for instance, to another's late arrival for an appointed meeting as to some criminal or otherwise wrongful act allegedly committed against him by the other. We think, however, that the trial court could reasonably conclude that the statement "why did you do this to me" carried sufficiently accusatory implications to call for a response from the one to whom it was directed. In order to be accusatory in character, a statement does not necessarily have to be of such tenor that any stranger hearing it would understand it as such. Annot., 80 A.L.R. 1235, 1278. The statement "why did you do this to me" is expressive of a belief held by the declarant that the defendant had done something "to" her which required explanation. Such an expression is fairly characterized as accusatory.

We next consider whether, as argued by the defendant, the trial court should have refused to admit, as an

"A. Female and male. Black female and male.

"Q. And what at that point did you do, if anything?

"A. Okay. They didn't know what had happened. The female was—her back was toward me so she didn't—she didn't see me come up. He saw and so I just—I walked over there."

admission by silence, evidence of the defendant's silence because the presence of police, at the time a response would otherwise have been called for, rendered the significance of the defendant's choice to remain silent ambiguous. It is undoubtedly true that some individuals might, in the situation faced by the defendant, choose not to answer. "[I]t is a lamentable but undeniable fact of modern society that some of our citizens harbor a mistrust for law enforcement authority which leads them to shun contact with the police even when the avoidance of contact is not in their own best interest . . . . Such individuals may refrain from speaking to law enforcement officials not because they are guilty of some crime, but rather because they are simply fearful of coming into contact with those whom they regard as antagonists." *People* v. *Conyers,* 52 N.Y.2d 454, 458, 438 N.Y.S.2d 741, 420 N.E.2d 933 (1981). An individual's prearrest silence in the presence of police could be attributable to "the natural caution that arises from his knowledge that anything he says might later be used against him." Id. Because there are at least several plausible explanations for why an individual might refrain from responding to an accusatory statement directed to him in the presence of police, the defendant's argument that his silence was too ambiguous to be admissible as an admission is appealing. Clearly, the probative value of evidence of a choice to remain silent in the face of accusation as proof of assent to the statement is less when the accusatory statement is made in the presence of police than if police were not present. We decline, however, to adopt a rule that would make evidence of a defendant's choice to remain silent in the face of an accusation directed to him by another in the presence of police inadmissible as a matter of law and adopt instead a case-by-case approach.

On the basis of the facts of this case, we decide that the trial court erred in permitting Canino to

testify that the defendant remained silent in the face of the victim's accusation. At the time the court ruled on the admissibility of the state's evidence of the defendant's silence, the uncontradicted evidence regarding the surrounding circumstances was (1) that the victim was making her accusatory statement as Canino approached, (2) that the defendant saw Canino, a police officer, approaching, (3) that Canino arrived just as the victim completed the accusatory statement, and (4) that the victim, according to her own testimony, was "very, very emotional" at the time she made the statement. On this record, we cannot say that it was reasonable for the trial court to conclude that a sufficiently strong inference of assent could be drawn from the fact of the defendant's silence to justify admission of this fact into evidence. First, evidence that the declarant of an accusatory statement was highly emotional at the time the statement was made may weaken any inference of assent that might otherwise be drawn from the fact of silence to such an extent that evidence of the silence is rendered inadmissible. *State* v. *Harris,* supra. In *State* v. *Harris,* supra, the Supreme Court held that the trial court erred in admitting, as an admission by silence, evidence of the defendant's choice to remain silent in response to an accusatory statement because evidence that the declarant was in a state of emotional hysteria when she made the statement gave rise to an alternative explanation for the defendant's silence. The court in *Harris* stated: "In this circumstance the defendant may well have felt that any response on his part either would have been pointless because [the declarant's] agitated mental condition precluded her from appreciating any reasonable rejoinder or might have exacerbated the existing tension." The present case involves similar evidence of an "emotional factor" constituting, under *State* v. *Harris,* "a sufficient impediment . . . to the invocation of the infer-

ence [of assent]." Id. In *Harris,* the existence of this 'emotional factor" was sufficient in and of itself to render evidence of the defendant's silence inadmissible.

Second, the evidence before the trial court was that, as the victim spoke the accusatory words, Canino, a police officer, was approaching the place where the victim and the defendant were standing, that the defendant was aware of this, and that Canino's arrival and the victim's completion of the accusatory statement were practically simultaneous. On these facts, we think the defendant's failure to respond to the victim's statement is equally likely to be attributable to distraction or apprehension occasioned by the impending arrival of a police officer; see *People* v. *Conyers,* supra; or to bewilderment or confusion, as to acquiescence in the truth of the accusatory statement. In short, in the particular circumstances involved in this case, the fact that the defendant remained silent was too unreliable as evidence of assent to the victim's statement to be admissible as an admission by silence.

Although we find that the trial court erred in overruling the defendant's hearsay objection and admitting, as an admission by silence, evidence of the defendant's silence in the face of accusation, the question remains whether the error was harmful. The error in this case does not involve a constitutional violation. The burden is therefore on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Harris,* supra, 230; *State* v. *Petterson,* 17 Conn. App. 174, 183, 551 A.2d 763 (1988). " 'The defendant must show that it is more probable than not that the erroneous action of the court affected the result.' " *State* v. *Petterson,* supra, 183, quoting *State* v. *Jones,* 205 Conn. 723, 732, 535 A.2d 808 (1988). The defendant in his appellate brief essentially argues that "[a]ny admission by silence to [the] accusation had monumental effect in establishing [the

defendant's] guilt in an otherwise close case." The defendant's conclusory statement fails to demonstrate that it is more probable than not that the trial court's error affected the result in the case. "In the absence of any showing of prejudice, any discussion of harmfulness is speculative at best." *State* v. *Petterson,* supra. Moreover, our review of the record reveals that the case against the defendant was sufficiently strong that the jury in all probability would have found him guilty of the crime charged even if the erroneously admitted evidence had not been admitted. See *State* v. *Flinter,* 16 Conn. App. 402, 548 A.2d 1 (1988). We conclude that the trial court's error in admitting evidence of the defendant's silence in the face of accusation was harmless.

The defendant's second claim is that the trial court erred in failing to instruct the jury that, in order to find the defendant guilty of sexual assault in the first degree under General Statutes § 53a-70, it had to decide unanimously which of two statutorily designated acts necessary to constitute the offense the defendant had committed. The defendant asserts that that failure violated his right to a unanimous jury verdict in a trial by a six-member jury under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution because the jurors could have believed that they could find him guilty even if they did not unanimously agree on which act the defendant committed.

The defendant neither submitted a request to charge nor excepted to the charge given by the trial court. Generally, this court will not consider claims of error relating to the trial court's charge to the jury where no request to charge was submitted and no exception was taken to the charge as given. Practice Book §§ 854, 4185; *State* v. *Benite,* 6 Conn. App. 667, 670, 507 A.2d 478 (1986). The defendant requests review, however,

under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We have previously held that the federal constitutional issue raised by the defendant in this case falls within the "exceptional circumstances" rule of *State* v. *Evans,* supra. *State* v. *Velez,* 17 Conn. App. 186, 196, 551 A.2d 421 (1988); *State* v. *Benite,* supra, 671; *State* v. *West,* 3 Conn. App. 650, 654–55, 491 A.2d 428 (1985). We will therefore address the defendant's federal constitutional claim.[9]

The state charged the defendant by substitute information with sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), alleging that the defendant "compelled the victim to engage in sexual intercourse *by the use of force and the threat of use of force* . . . . " (Emphasis added.) At trial, the court charged the jurors that, in order to find the defendant guilty of sexual assault in the first degree, they must find that the state had proved beyond a reasonable doubt that "the defendant compelled the victim to engage in . . . sexual intercourse, *either by the use of force or by the threat of the use of force.*" (Emphasis added.) The court later instructed the jurors that they must render a unanimous verdict. The court did not instruct the jurors that they could only find the defendant guilty if they could unanimously agree on which method of compulsion—use of force or threat of use of force—the defendant used. The defendant argues that the court's failure to charge the jurors that they had to agree unanimously in this regard permitted them to convict the defendant even if all jurors did not agree on the means by which the defendant compelled the victim to engage in sexual intercourse.

---

[9] We decline to undertake an analysis of whether the defendant's rights under article first, § 8, of the Connecticut constitution were violated because the defendant offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state claims. See *State* v. *Bowden,* 15 Conn. App. 539, 543, 545 A.2d 591, cert. denied, 209 Conn. 810, 548 A.2d 438 (1988).

The issues encompassed by the defendant's claim have previously been analyzed by this court. A specific unanimity instruction is required "only where a trial court charges a jury that the commission of any one of several alternative actions would subject a defendant to criminal liability, *and those actions are conceptually distinct from each other,* and the state has presented some evidence supporting each alternative." *State* v. *Benite,* supra, 674–75. (Emphasis added.) This court decided in *State* v. *West,* supra, 656, that "the use of force" and "the threat of use of force" were not "conceptually distinct" acts requiring the giving of a specific unanimity charge to the jury. These decisions are dispositive of the claim raised by the defendant, and we hold that the trial court's failure to charge the jurors that they must unanimously agree whether the defendant employed "use of force" or "the threat of use of force" did not violate the defendant's right, under the sixth and fourteenth amendments, to a unanimous verdict in a trial by a six-member jury.

The defendant's final claim is that the trial court erred in permitting the state's attorney improperly to "[inject] into argument the notion that someone was either lying or committing perjury." The defendant points to six remarks made by the state's attorney during final argument,[10] claiming that the state's attorney in effect told the jury that it had to conclude that the victim was a liar before it could believe the defendant's version of events and acquit him. He claims that

---

[10] The defendant outlines the offending remarks in his brief as follows: "First in its opening statement, the State argued that the defendant's testimony showed either that he was mistaken through lack of memory or that he was lying. . . . Then, when commenting on the defendant's argument, which merely called attention to the inconsistencies amongst the State's own witnesses and never once called any of them liars, the State wrongfully characterized Mr. Gold as having called Miss H drunk, lying or mistaken. . . . Then the State asked why Miss H would want to perjure herself. . . . The State again tried to make the jury think that Mr. Gold

those remarks violated his rights to a fair trial and to due process of law under the fifth and fourteenth amendments to the United States constitution and under article first, § 8, of the Connecticut constitution.

The defendant made no objection to the prosecutor's remarks either during or after the argument and requested no curative charge. Where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Chace,* 199 Conn. 102, 108, 505 A.2d 712 (1986); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 673, 500 A.2d 1324 (1985). Where counsel fails to object or to request a curative charge, " 'we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized.' *State* v. *Lubesky,* [195 Conn. 475, 484, 488 A.2d 1239 (1985)]; *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983)." *State* v. *Chace,* supra.

The defendant claims review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Our Supreme Court has reviewed claims of prosecutorial misconduct under *State* v. *Evans,* supra, where the defendant raised a claim, adequately supported by the record, that he clearly has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Williams,* 204 Conn. 523, 536, 529 A.2d 653 (1987); *State* v. *Findlay,* 198 Conn. 328, 344, 502 A.2d 921, cert. denied, 476 U.S.

had called Miss H a liar; in commenting upon all the consistencies in her various statements, the State, three separate times, sarcastically called Miss H a 'great liar'. . . . It followed up by arguing that if the defendant's story was correct then Miss H had to either be a great liar or a great actress (based upon her performance in front of Canino at the scene). . . . And finally, in rebutting the defendant's attacks on the poor police investigation, the State asked whether the failure to get the name of the person who reported Miss H's screams automatically meant that the police or Miss H were lying."

1159, 106 S. Ct. 2279, 90 L. Ed. 2d 921 (1986); *State v. Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984). *Evans* review of claims of prosecutorial misconduct has been denied, however, where claimed misconduct was not "blatantly egregious" and consisted only of "isolated and brief episodes" that did not reveal "a pattern of conduct repeated throughout the trial." *State v. Williams,* supra, 537; see also *State* v. *Robinson,* 14 Conn. App. 146, 150, 539 A.2d 1037, cert. denied, 208 Conn. 805, 545 A.2d 1101 (1988).

Our review of the record in this case leads us to conclude that review under *Evans* of the defendant's claim is not warranted. The defendant has pointed to six remarks made by the prosecutor during closing argument. No pattern of conduct repeated throughout the trial is evident; rather, the claimed misconduct consists only of isolated and brief remarks which have no blatantly egregious import. The defendant's claim of prosecutorial misconduct is not adequately supported by the record. Accordingly, we conclude that the defendant has failed to raise a claim, adequately supported by the record, that misconduct by the prosecutor caused him to be deprived of a fundamental constitutional right and a fair trial, and we therefore decline to review the defendant's claim under *Evans.*

There is no error.

In this opinion the other judges concurred.