Rivera, J.
(dissenting). I disagree with the majority that defendant, while a pretrial detainee in custody on Rikers Island who was informed both of his Miranda rights and that his telephone calls were routinely recorded by law enforcement, acquiesced to his intimate partner’s accusations during a monitored conversation because he failed to deny her statements. We have long recognized that an accused’s pretrial silence is generally prejudicial and inadmissible. Yet, the trial court below erroneously admitted into evidence, as an adoptive admission by silence, a recording of the Rikers Island telephone call between defendant and the victim. The circumstances of defendant’s detention do not justify an inference of defendant’s acquiescence, and the use of the recording here is nothing more than an improper attempt to allow a jury to infer an admission from the silence of a defendant where such silence has no probative value (see generally People v De George, 73 NY2d 614 [1989]; People v Conyers, 52 NY2d 454 [1981]). The majority’s reasoning is contrary to both our law and principles of fairness because any inference of an admission from an inmate’s silence *694 during these recorded conversations is presumptively unsound, and therefore I dissent.
According to well-established state evidentiary rules, the People generally may not use either in its case-in-chief or for impeachment a defendant’s pretrial silence, meaning a defendant’s failure to speak or to assert affirmatively innocence in the face of inquiry by law enforcement (People v Rutigliano, 261 NY 103, 107 [1933]; Conyers, 52 NY2d at 459).* This proscription on the use of silence recognizes that “a defendant’s silence is generally ambiguous and ‘of extremely limited probative worth’” (People v Williams, 25 NY3d 185, 191 [2015], quoting Conyers, 52 NY2d at 458). Silence is especially weak evidence of guilt because a defendant may stand mute in the face of a direct accusation for a number of reasons unrelated to actual criminal culpability (Conyers, 52 NY2d at 458). For example, a defendant may feel no need to respond to what defendant maintains is an unsupported, baseless allegation for which denial would be futile; a defendant may be uncertain what to say and fear any response will be misinterpreted and used against them; a defendant may distrust law enforcement; or, a defendant may simply choose to invoke the constitutional right to remain silent (id.). Yet, “there is a substantial risk that jurors might ‘construe such silence as an admission and . . . draw an unwarranted inference of guilt’ ” (Williams, 25 NY3d at 191, quoting Conyers, 52 NY2d at 458-459). This rule is not predicated on any misconduct by law enforcement, but reflects the commonsense view that, under these circumstances, pretrial silence lacks probative value and the potential for prejudice, as outlined above, outweighs any probative worth of the evidence (Conyers, 52 NY2d at 459).
These same concerns are no less relevant when a defendant is an inmate and well aware that the government is monitor *695 ing a recorded conversation with a witness or codefendant, obviating any expectation of privacy while affirming the fear of self-incrimination (see Rutigliano, 261 NY at 105-106, citing Commonwealth v McDermott, 123 Mass 140 [1877], and McCarthy v United States, 25 F2d 298 [6th Cir 1928]). Whether a law enforcement official asks the question, or is merely listening to another’s accusation, a defendant’s silence is ambiguous and prejudicial (see e.g. People v Koerner, 154 NY 355, 375-376 [1897] [remitting for a new trial when the trial court allowed evidence of a witness’s accusation to law enforcement in the presence of the defendant but, under the circumstances, the defendant would not naturally have protested]).
The entirely separate evidentiary doctrine upon which the majority relies, the hearsay exception for adoptive admissions, cannot supplant the prohibition against the admission of a defendant’s pretrial silence. Here, the trial court’s admission of defendant’s post-accusatory, pretrial silence in response to allegations made in a recorded Rikers Island phone call as direct evidence of guilt violated state evidentiary law, and the inquiry ends there.
Nevertheless, even under the adoptive admission exception to hearsay, it was error to admit the recorded conversation.
“[A]ccusatory statements, not denied, may be admitted against the one accused, as admissions, but only when the accusation was ‘fully known and fully understood’ by defendant . . . , and when defendant was ‘at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement by his remaining silent’ ” (People v Allen, 300 NY 222, 225 [1949], quoting Koerner, 154 NY at 374, and People v Conrow, 200 NY 356, 367 [1911]; see also People v Campney, 94 NY2d 307, 311-312 [1999]).
The circumstances must be “such as would properly or naturally call for some action or reply from [persons] similarly situated” (Koerner, 154 NY at 374). Silence is not assent “unless the statements were such as to properly call for a response” (id.). Application of the rule in criminal cases “is to be applied with careful discrimination” as “ ‘[r]eally it is [the] most dangerous evidence’ ” (id.). As the Court explained more than a century ago, this evidence “should always be received with caution, and ought not to be admitted unless the evidence is of *696 direct declarations of a kind which naturally call for contradiction, or some assertion made to a party with respect to [the party’s] rights, in which, by silence, [the party] acquiesces” (id. at 374-375). Where the circumstances are such that ah inference of acquiescence cannot be drawn, as in where the evidence belies just such inference, the statements do not fall within the rule and their admission is error (Conrow, 200 NY at 367, citing People v Kennedy, 164 NY 449 [1900], People v Smith, 172 NY 210 [1902], and People v Cascone, 185 NY 317 [1906]).
Here, the circumstances not only do not establish tacit acquiescence, but they also contradict any such inference. At the time of the telephone call, defendant was a pretrial detainee on Rikers Island, and there is no dispute that he had been advised of his right to remain silent under Miranda v Arizona (384 US 436, 467-468 [1966]). Defendant had access only to telephones monitored by the New York City Department of Correction (DOC). There can be no question that defendant was made aware that his calls were monitored and could be made available to the District Attorney’s Office upon request for use in his prosecution. This Court recently described how Rikers detainees are notified in writing and by audio telecommunications that a call on a Rikers telephone is not private (see People v Johnson, 27 NY3d 199, 203 [2016]). The Inmate Handbook provided to all persons upon admission to Rikers Island states “that calls may be recorded and/or monitored” (id.). The signs posted near the Rikers’ telephones warn: “Inmate telephone conversations are subject to electronic recording and/or monitoring in accordance with [DOC] policy. An inmate’s use of institutional telephones constitutes consent to this recording and/or monitoring” (id.). A detainee using the telephone will hear a recorded advisement that “[t]his [telephone] call may be recorded and monitored” (id.).
Furthermore, attorneys are well aware of the Rikers’ telephone monitoring and use of recorded conversations in prosecutions and for plea bargaining purposes, and advise detainees accordingly. Indeed, the very same District Attorney’s Office that prosecuted defendant and appears in the instant appeal represented in Johnson that defendants should be assumed to understand that they are being monitored by law enforcement: “this type of evidence collection has been so well documented that it blinks reality to assume that defendants are not informed by their attorneys, at arraignments, that their unprivileged conversations will be recorded by DOC and *697 provided to the prosecutor upon request” (brief for respondent in response to amicus curiae submission in People v Johnson, 27 NY3d 199 [2016], at 4).
Given defendant’s awareness of his rights under Miranda and the multiple Rikers’ warnings, an inference that defendant adopted the victim’s accusatory statements is unjustified. A detainee who is informed that he has a right to remain silent before law enforcement and that all telephone statements are recorded and may be used against the detainee by the District Attorney would understand that a “verbalized response”—not silence—is a perilous course, placing any defense at risk. The natural reaction under these circumstances is to maintain silence, not to deny and contradict the accusations (see Conyers, 52 NY2d at 458; see also Williams, 25 NY3d at 191). As the District Attorney in Johnson recognized: “[g]iven the notices that the prisoners signed, read on the wall and heard as they made their phone calls, it is clear that far from taking secretive action to elicit incriminating statements, DOC took overt steps that would actually deter the prisoners from making such statements” (brief for respondent in People v Johnson, 27 NY3d 199 [2016], at 41 [emphasis added]). To avoid the use of incriminating evidence, a defendant should “refrain from discussing the case over the telephone with anyone but [defense counsel]” {id. at 43). The concurring opinion in Johnson also noted that the People’s alternative was “essentially, don’t talk to anyone other than your attorney about anything related to your case unless you want the prosecutor to know about it” (Johnson, 27 NY3d at 211). The District Attorney, and the majority, cannot ignore when a defendant comports with this advice.
The majority’s analysis relies on a misapplication of this Court’s reasoning in People v Campney (94 NY2d 307 [1999]) and recharacterizes in sweeping language the Court’s narrow holding, which was limited to the use of circumstantial evidence to infer a defendant’s adoption of an accomplice’s written confession. Campney neither involved a defendant’s silence, nor sanctioned the routine use of evidence as an adoptive admission where a defendant says nothing. Rather, the case stands for the proposition that circumstantial evidence of a defendant’s conduct and speech may support an inference that the defendant has adopted inculpatory statements {id. at 313). The trial court admitted circumstantial evidence to prove that the defendant had read his brother’s written and signed *698 statement to police confessing to the crime (id. at 312). After the brother gave the police a verbal statement, he asked to speak with defendant and the police left the two alone in an interrogation room for 10-15 minutes (id.). When the police returned, they observed defendant holding the written statement (id.). When an officer asked the brother if he was ready to sign the statement, the brother asked the defendant what he should do, and the defendant responded, “You might as well sign it, you already told them all about what happened” (id.). The Court affirmed the admission of defendant’s exclamation to his brother and the written statement as an adoptive admission (id.). The Court concluded based on the circumstantial evidence that the lower court “had enough before it to deduce that defendant had read or been informed of the contents of the statement, understood its implications, and affirmatively adopted the statement as his own” (id. at 313).
In reaching the holding in Campney, the Court expressly distinguished the jurisprudence on acquiescence by silence because the “defendant explicitly manifest [ed] an awareness of a statement and acceptance of the import of its contents” (id.). The adoptive admission was justified because the dangers highlighted in prior cases and associated with acquiescence by silence are not present “where a verbalized response is involved, not a failure to speak” (id.). Here, however, the trial court admitted the Rikers telephone call based on defendant’s silence, not a verbalized response acknowledging the accusations or suggesting an adoption of the alleged wrongdoing. Thus, Campney does not support the majority’s analysis. Indeed, it reinforces our long-standing recognition that evidence of a defendant’s silence is of no probative value, while being prejudicial and inherently ambiguous.
The trial court’s error in admitting the telephone conversation as a tacit admission was not harmless, particularly because the recording also contained a prior consistent statement of a victim whose credibility was the primary focus of the case. “An error of law may be found harmless where ‘the proof of the defendant’s guilt, without reference to the error, is overwhelming’ and where there is no ‘significant probability . . . that the jury would have acquitted the defendant had it not been for the error’ ” (People v Arafet, 13 NY3d 460, 467 [2009], quoting People v Crimmins, 36 NY2d 230, 241-242 [1975]). An error is typically harmless when the challenged evidence was not the People’s key piece of evidence (see People v Arafet, 13 NY3d 460, 468 [2009]).
*699 Here, where the jury acquitted defendant of certain charges based on the victim’s testimony, the evidence of defendant’s guilt was not overwhelming. The medical evidence placed the injury as having occurred within the three weeks before the victim went to the hospital, which did not contradict defendant’s claim that another boyfriend of the victim caused the injury. However, most damaging to the People’s case was the credibility of the victim, their key witness, who, in the words of the prosecutor, was “a disaster.” Defense counsel impeached the victim by highlighting her prior inconsistent statements, drug addiction, and prior convictions for violence against other intimate partners. In summation, the prosecutor asked the jury not to rely alone on the victim, an obvious concession to the weakness of the People’s case. “I know [the victim] is a disaster. I know that. However, I am not asking you to just rely on her. She has a lot of issues but I’m not just asking you to rely on her in this case.” The prosecutor, recognizing that a defendant’s silence when accused of wrongdoing is powerful, expressly advocated that the jury rely on the defendant’s failure to speak against the accusation as proof of his guilt. The prosecutor further argued that defendant’s silence while being recorded established his guilt because anyone would have spoken out under those circumstances:
“[E]ach inmate is put on notice that their calls are recorded. There are signs posted near all of the telephones that say they are recorded. If you knew that you were being recorded and you were innocent, wouldn’t that be all the more reason for you to deny it? . . .
“He couldn’t deny it to her because she was there. Because she was there when he did that to her.”
Thus, although the majority maintains that defendant’s awareness that his calls were monitored is irrevelant (majority op at 692-693), the prosecutor used this fact persuasively before the jury.
This was a case of intimate partner violence with no witness to the assault, so the case turned on who the jury believed (e.g. People v Delamota, 18 NY3d 107, 116 [2011]). Where the victim’s credibility was suspect, the medical evidence established a three-week window for the assault, and the prosecutor’s summation advocated guilt based on defendant’s silence, the proof of guilt was not overwhelming and a significant probability exists that the jury would have acquitted the defendant *700 had the court not erroneously admitted evidence of the telephone call—a call which contained a prior consistent statement used to bolster the victim’s credibility. I would reverse the Appellate Division’s order affirming defendant’s conviction.
As this case illustrates, it is inherently unfair to inform a Rikers Island detainee that telephone calls are being monitored by the government and may be used as evidence against the detainee by the prosecution, only to penalize the detainee who elects not to speak during a recorded telephone call. Now, despite this Court’s continual acknowledgment of the limited probative value of a defendant’s silence in these circumstances, and the inherent prejudice that may result from admitting evidence of a defendant’s silence, the majority penalizes defendant for choosing not to speak, a conclusion not supported by our law or notions of fairness.
I dissent.
Judges Stein, Fahey and Garcia concur; Judge Rivera dissents in an opinion in which Chief Judge DiFiore concurs; Judge Wilson taking no part.
Order, insofar as appealed from, affirmed.

 The majority seems to misapprehend our case law on this point by suggesting that adoptive admissions by silence should be treated differently than adoptive admissions by elusive non-responses (majority op at 690-691). Our court has long held that the touchstone of the adoptive admission by silence jurisprudence is the “failure to deny, or to make immediate and positive denials” when faced with accusation (see People v Allen, 300 NY 222, 225 [1949]; see also People v Williams, 25 NY3d 185, 189, 193-194 [2015] [holding that it was error for the prosecutor to invite jurors to consider defendant’s failure to deny an accusation as evidence of guilt]). Accordingly, the People sought admission of this evidence as an adoptive admission by silence and the trial court admitted it as such. Therefore, despite the majority’s assertion to the contrary (majority op at 690), defendant’s elusive or non sequitur responses to the victim’s accusations constitute “silence.”