=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 34
The People &c.,
            Respondent,
        v.
Paul Williams,
            Appellant.


            Piotr Banasiak, for appellant.
            James P. Maxwell, for respondent.


FAHEY, J.:

        This appeal concerns the People's references in their

case-in-chief to defendant's selective silence during custodial

interrogation, after defendant had waived his <u>Miranda</u> rights and

agreed to speak to the police.  We hold, as a matter of state

evidentiary law, that evidence of a defendant's selective silence

- 1 -

generally may not be used by the People as part of their case-in-chief, either to allow the jury to infer the defendant's admission of guilt or to impeach the credibility of the defendant's version of events when the defendant has not testified.

I.

On August 30, 2008, defendant, the victim's former boyfriend, arrived at the victim's apartment unannounced. According to the victim's trial testimony, defendant gained entry to the apartment by means of a ruse and then raped her in the bathroom of the apartment; she testified that the bathroom sink crashed to the floor as she struggled with defendant. After defendant left the apartment, the victim called the police, and defendant was taken into custody. The detective who interviewed defendant advised him of his Miranda rights. Defendant stated that he understood those rights and that he was willing to speak with the detective, but he refused to sign the Miranda form.

Defendant was evasive during the ensuing interview. Defendant admitted that he knew the victim, but when the detective asked him specific questions about the incident, defendant either did not respond or repeated the detective's questions back to him. When asked whether he had sex with the victim, defendant did not answer. While the police were transporting defendant to his arraignment, defendant admitted that he had been in the victim's kitchen earlier that day.

Saliva taken from the victim's shoulder and left breast matched defendant's DNA.  In addition, the victim had a bruise and scratches on her body, and the sink in her bathroom was broken off from the wall.

Defendant was charged with rape in the first degree, burglary in the second degree, sexual abuse in the first degree, rape in the third degree, and criminal impersonation in the first degree.  After a Huntley hearing, County Court denied defendant's motion to suppress his statements to the police.

At trial, the prosecutor told the jurors during opening statements that they would hear defendant's grand jury testimony, during which defendant asserted that he and the victim had consensual sex in the bathroom of her apartment on the day in question.  The prosecutor further stated that the jury would be able to compare defendant's grand jury testimony with defendant's statements to the detective during the custodial interview, which the prosecutor characterized as "not outright denying what ha[d] happened, but not admitting to it either."

During her opening statement, defense counsel told the jury that defendant had a right to refuse to speak to the police and that his silence should not be used against him.  Defense counsel later objected to the part of the prosecutor's opening referring to defendant's postarrest silence.  County Court refused to issue a curative instruction.  The court reasoned that defense counsel had adequately responded to the prosecutor's

opening statement in her own opening statement.

The court permitted the detective who had interviewed defendant to testify, over defense counsel's objection, as follows:

> "[THE PROSECUTOR]: Did you ever specifically ask [defendant] if he had sex with [the victim]?
>
> [THE DETECTIVE]: Yes.
>
> Q.        And what was his response?
>
> A.        He didn't answer.
>
> Q.        He didn't answer?
>
> A.        No.
>
> Q.        Did he deny it?
>
> . . .
>
> A.        No."

Later during the People's direct case, the court admitted defendant's grand jury testimony in evidence.  Defendant did not testify at trial and did not present any evidence.

During closing arguments, the People again noted defendant's failure to respond when the detective asked defendant whether he had sex with the victim.  Defense counsel made no specific objection to this portion of the prosecutor's closing argument.  The People argued that in light of defendant's failure to respond to that question, defendant's grand jury testimony that the sex was consensual should be deemed to be incredible and a fabrication concocted by defendant after he learned that the

saliva on the victim's body matched his DNA.  The jury subsequently convicted defendant of sexual abuse in the first degree, rape in the third degree, and criminal impersonation in the first degree.

The Appellate Division modified County Court's judgment in respects that are not pertinent here and, as modified, affirmed (107 AD3d 1391 [4th Dept 2013]).  The court determined that defendant's contention regarding the People's use of his selective silence was preserved with respect to the prosecutor's opening statement and the detective's testimony (see id. at 1393).  The court further determined that defendant's contention with respect to the prosecutor's closing argument was unpreserved, but it addressed that part of defendant's contention as a matter of discretion in the interest of justice (see id.). On the merits, the Appellate Division held that the comments by the prosecutor concerning defendant's postarrest silence during opening and closing statements were improper and that County Court erred in admitting into evidence that portion of the detective's testimony concerning defendant's selective silence (see id. at 1394).  The Appellate Division further concluded, however, that "any such errors were harmless beyond a reasonable doubt" (id. [internal quotation marks omitted]).

A Judge of this Court granted defendant leave to appeal (22 NY3d 1160 [2014]).  We now reverse.

II.

As a preliminary matter, we agree with the Appellate Division that defendant's contention regarding the People's use of his selective silence was preserved as to the prosecutor's opening statement and the detective's testimony, but not as to the prosecutor's closing statement. Consequently, we do not consider defendant's challenge to the prosecutor's closing argument.

It is a well-established principle of state evidentiary law that evidence of a defendant's pretrial silence is generally inadmissible (see People v Rutigliano, 261 NY 103, 106-107 [1933]). In People v Conyers (52 NY2d 454 [1981]), we extended that principle and held that, absent circumstances not present in that case, "our State rules of evidence preclude the use of a defendant's pretrial silence to impeach his trial testimony" (id. at 457). This was so because a defendant's silence is generally ambiguous and "of extremely limited probative worth" (id. at 458). We noted that there are many reasons why an individual may choose not to speak to police that are wholly unrelated to the veracity of his or her trial testimony, but that there is a substantial risk that jurors might "construe such silence as an admission and . . . draw an unwarranted inference of guilt" (id. at 458-459).

We subsequently held in People v De George (73 NY2d 614 [1989]) that our decision in Conyers applied to a defendant's

"pretrial" silence and was not limited to "postarrest" silence (id. at 619-620).  We reiterated that, as a matter of state evidentiary law, the People generally may not use evidence of defendant's pretrial silence either on their direct case or to impeach the defendant's trial testimony (see id. at 617-618).

There may be a rare set of circumstances in which it is permissible for the People to refer to a defendant's silence during their case-in-chief.  However, the general evidentiary principles established in Conyers and De George remain in place today: the People generally may not refer to a defendant's silence during their direct case, and, absent unusual circumstances, the People may not use a defendant's silence to impeach his or her trial testimony.

We have twice held that such unusual circumstances existed.  In People v Rothschild (35 NY2d 355 [1974]), the defendant, a police officer, was accused of larceny by extortion for his conduct in threatening members of the victim's family in order to obtain money from the victim.  At trial, the defendant testified that he had agreed to accept money from the victim in order to arrest the victim for bribery.  On cross-examination, the prosecutor elicited from defendant that he had not told any of his superior officers after his arrest about the victim's supposed bribe offer.  We held that such inquiry on cross-examination was permissible because the defendant had a duty to inform his superior officers of any bribe and, in light of that

duty, his failure to speak was "patently inconsistent with the defense asserted" (id. at 360).

In People v Savage (50 NY2d 673 [1980], cert denied 449 US 1016 [1980]), the defendant was arrested on charges of intentionally shooting the victim during an altercation.  The defendant confessed to the arresting officer that he had shot the victim.  During trial, the defendant testified that the victim had attempted to rob him and that the discharge of the gun was inadvertent.  On cross-examination, the prosecutor asked the defendant whether he had told the arresting officer that the victim had attempted to rob him.  We held, as a matter of state evidentiary law, that such questioning was permissible impeachment because defendant's conspicuous omission of these exculpatory facts in his voluntary statement to police tended to show that his trial testimony was a recent fabrication.  We recognized in Savage, however, that "reference to the omission, because of its negative nature, could not serve substantively as evidence in chief to prove the commission of the crime" (id. at 679-680).

The People contend that the circumstances present in this case are analogous to those present in Savage and Rothschild, and that the general principles articulated in Conyers and De George do not control.  We disagree.

This case is fundamentally different from Savage and Rothschild.  In those cases, the People used conspicuous

omissions from the defendants' statements to police during cross-examination of the defendants, in order to impeach the credibility of the exculpatory testimony provided by the defendants at trial.  Here, by contrast, the People introduced, as part of their case-in-chief, evidence regarding defendant's failure to tell the detective during custodial interrogation that he and the victim had consensual sex.  Later during their case-in-chief, the People also introduced defendant's grand jury testimony, during which defendant insisted that he and the victim had consensual sex.  The People's use of defendant's silence during their case-in-chief therefore violated our common-law rules of evidence (see De George, 73 NY2d at 618).  Inasmuch as defendant did not testify at trial, there is no need for us to consider whether unusual circumstances such as those present in Savage and Rothschild would have allowed the People to use defendant's selective silence to impeach him if he had testified (see Conyers, 52 NY2d at 459).

        The People claim that they were essentially impeaching the defendant's grand jury testimony because evidence of defendant's omission was necessary to demonstrate that the version of events he told the grand jury was false.  The People also contend that the admission of defendant's grand jury testimony was helpful to defendant, because had the People not presented that testimony to the jury, defendant "would have had to testify in order to put his claim of consensual sex before the

jury." These arguments are without merit. The People may not introduce evidence that they deem favorable to defendant on their direct case and impeach that evidence, also on their direct case, with evidence of defendant's silence.

Furthermore, although evidence of defendant's silence was inadmissible during any part of the People's direct case, the People's claim that their purpose was to impeach defendant's grand jury testimony is weakened by the fact that they introduced evidence of defendant's silence *before* they introduced his grand jury testimony. Thus, at the time that the detective testified that defendant neither admitted nor denied having sex with the victim, there was no contrary version of events to impeach. The risk that the jurors drew an improper inference of guilt was therefore even greater.

There is no need to depart from the principles articulated in De George and Conyers merely because defendant's silence here was only partial. If silence could constitute an answer, then the People could meet their burden simply by asking a question. Moreover, evidence of a defendant's selective silence "is of extremely limited probative worth" (Conyers, 52 NY2d at 458). A defendant who agrees to speak to the police but refuses to answer certain questions may have the same legitimate or innocent reasons for refusing to answer as a defendant who refuses to speak to the police at all (see id.). Furthermore, the potential risk of prejudice from evidence of a defendant's

selective silence is even greater than the risk to a defendant who chooses to remain totally silent. Jurors are more likely to construe a defendant's refusal to answer certain questions as an admission of guilt if the defendant has otherwise willingly answered other police inquiries. The ambiguous nature and limited probative worth of a defendant's selective silence is outweighed by the substantial risk of prejudice to the defendant from admission of such evidence (see id. at 459). Evidence of a defendant's selective silence therefore generally may not be used by the People during their case-in-chief and may be used only as "a device for impeachment" of a defendant's trial testimony in limited and unusual circumstances (Savage, 50 NY2d at 680; see Conyers, 52 NY2d at 459).

The People's use of defendant's selective silence in this case was improper for another reason. In her opening statement, the prosecutor told the jury that defendant did not admit or deny the accusations when he spoke to the detective. Furthermore, during direct examination of the detective, the prosecutor elicited testimony establishing not only that defendant did not answer when asked whether he had sex with the victim, but also that he did not deny it either. In addition to using defendant's selective silence as a purported impeachment device during their direct case, the People also invited the jury to infer an admission of guilt from defendant's failure to deny the accusations. The risk that the jury made such an

impermissible inference is substantial where, as here, defendant selectively answered some police questions but not others, and the court refused to provide any curative instruction.  The prosecutor's comments regarding defendant's selective silence during opening statements were improper, and the court erred in allowing testimony concerning defendant's selective silence at trial, inasmuch as the comments and testimony allowed the jury to "draw an unwarranted inference of guilt" (Conyers, 52 NY2d at 459).

In light of our holding that the People's use of defendant's selective silence violated our common-law evidentiary principles, we need not address defendant's contention that the People's use of his selective silence also violated the State and Federal Constitutions (see De George, 73 NY2d at 618; Conyers, 52 NY2d at 457).

III.

The People contend, in the alternative, that any error was harmless.  Under the standard applicable to nonconstitutional errors, an error is harmless if the proof of defendant's guilt is overwhelming and there is no significant probability that the jury would have acquitted defendant had the error not occurred (see People v Crimmins, 36 NY2d 230, 242 [1975]).

We conclude that the errors are not harmless as a matter of law.  Even assuming that the evidence of defendant's guilt is overwhelming, there is a significant probability that

the jurors would have acquitted defendant if the errors did not occur. For the reasons discussed above, evidence of defendant's selective silence is highly prejudicial, and there is a significant risk that the jurors deemed defendant's failure to answer the detective's question as to whether he had sex with the victim to be an admission of guilt. Moreover, the court refused to provide a curative instruction to the jury after the prosecutor referred to defendant's selective silence during her opening statement.

We do not place as much significance as our dissenting colleagues on defendant's response to the detective during custodial interrogation (see dissenting op. at 2-3). Although it is true that the detective had not said anything to defendant "about breaking down a door," the detective told defendant that "the reason why you're here today is that it's being alleged that you forced your way into [the victim's] apartment and had sex with her." Defendant responded, "Honestly, do you think I just broke down the door?" Inasmuch as the detective had just told defendant that he was accused of forcing his way into the victim's apartment, defendant's response was consistent with a denial of that accusation and with his later admission that he was in the victim's apartment that day. Furthermore, defendant's response was in agreement with the version of events that he later told the grand jury: that he and the victim had consensual sex after she ultimately allowed him into her apartment. We

therefore respectfully disagree with our dissenting colleagues that defendant's response to the detective "revealed his knowledge of the breaking and entering aspect of the crime at a time when such knowledge could only have flowed from his participation in the offense" and that his response was evidence of his consciousness of guilt (dissenting op. at 2-3). Rather, defendant's response to the detective was just as compatible with a denial of the accusation that he had forced his way into the victim's apartment. We therefore hold that the error was not harmless and that reversal is required.

In light of our decision that there must be a new trial, we have no need to address defendant's remaining contentions.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

People v Paul Williams

No. 34

ABDUS-SALAAM, J.(dissenting):

I agree with the majority that the trial court erred in permitting the People to adduce evidence of, and comment upon, defendant's partial post-arrest silence on their case-in-chief, for state evidentiary law barred the admission of that evidence (see majority op. at 1-2, 6-12; see also People v De George, 73 NY2d 614, 617-620 [1989]; People v Conyers, 52 NY2d 454, 457-459 [1981]).  As the majority's excellent and learned discussion of our case law in this area reveals (see majority op. at 6-9), only the most unusual circumstances will justify the admission of a defendant's post-arrest silence on the People's direct case, and no such circumstances exist here.  However, unlike the majority (see majority op. at 12-14), I find that the error was harmless on account of the overwhelming quality of the proof against defendant and the limited prejudice occasioned by the evidence of his silence.  While I acknowledge that reasonable minds may differ on the harmless error issue presented by this case, my disagreement with the majority on this subject nonetheless prompts me to respectfully dissent.

As the majority rightly points out (see majority op. at 6, 10-12), evidence of post-arrest silence has limited probative

- 1 -

value and risks improperly prejudicing a defendant by causing the jurors to speculate that the defendant remained silent in an effort to hide his or her guilt (see Conyers, 52 NY2d at 459). But, here, defendant's silence in the face of police questioning, which should have been excluded from evidence, was scarcely any more harmful than the properly admitted evidence that he had revealed his knowledge of the breaking and entering aspect of the crime at a time when such knowledge could only have flowed from his participation in the offense.

In that regard, defendant's girlfriend told the police and, later, the jury, that on the day of the crime, defendant had pretended to be a police officer in order to convince her to open the door to her apartment. When she opened the door and saw defendant, she tried to close it again, but he pushed it open to force his way into the apartment, at which point she succumbed to a combination of his physical effort and oral entreaties. During their interview with defendant, the police did not disclose this information to him. Nonetheless, defendant told the police, "Honestly, do you think that I just broke the door down?" At the Huntley hearing, the court ruled this statement admissible, and therefore the jury properly received it regardless of whether they should have learned of defendant's post-arrest silence. Having heard that statement, the jury surely would have inferred that defendant was conscious of his own guilt insofar as he knew that he had used a ruse and then physical force to effectively

break into the apartment to commit the crime. Consequently, the forbidden evidence of defendant's post-arrest silence did not significantly impact the outcome of the trial because, absent that evidence, the jury still would have drawn an adverse inference from defendant's interactions with the police based on the admissible evidence (see People v Crimmins, 36 NY2d 230, 242 [1975]).

Furthermore, the evidence of defendant's guilt was overwhelming (see id.; see also People v Boop, 118 AD3d 1273, 1273 [4th Dept 2014], lv denied 24 NY3d 1082 [2014]; see generally Conyers, 49 NY2d at 183). After all, even without the contested proof of defendant's silence, the jury still would have received the following fully admissible testimonial evidence: (1) defendant's girlfriend's consistent testimony, which in essential substance matched her statement to the police, that defendant had used a ruse to convince her to open the door to the apartment, that he had pushed the door open when she tried to close it on him, that he had brutally raped her, that she had called a friend to come to her aid and that she had reported the rape to the friend, who called the police; (2) the testimony of the friend, Nicole Veaudry, that the girlfriend had summoned her to the apartment immediately after the incident, had reported that something had occurred, had been shaking and crying, and had prompted Veaudry to call the police; (3) the testimony of police officers that the girlfriend was still upset when they responded

to the 911 call and that the bathroom sink in her apartment had been dislodged; (4) the testimony that, in response to police questioning, defendant said, "Honestly, do you think that I just broke the door down?"; and (5) defendant's grand jury testimony, in which he delivered an account of events that seemed to be tailored to match the medical and other evidence, which he admitted having reviewed prior to his testimony.

Additionally, without knowledge of defendant's post-arrest silence, the jurors still would have learned of the following physical evidence and explanatory testimony: (1) DNA evidence showing that defendant left his saliva on several of his girlfriend's body parts during the incident; (2) physical evidence of numerous cuts and a hand-shaped mark on the girlfriend's body; (3) physical evidence of a laceration between the girlfriend's vagina and anus; and (4) the Sexual Assault Nurse Examiner's testimony that this injury had been caused by blunt force trauma, that it was consistent with forcible sexual assault and that, while it could have theoretically occurred during consensual sex, the nature and location of the injury rendered a consent scenario unlikely.  Given that the physical evidence corroborated defendant's girlfriend's account of a forcible rape and the testimonial proof thoroughly reinforced her credibility while undermining defendant's, the evidence overwhelmingly established defendant's guilt of the crimes of which he was convicted.

In sum, while I certainly do not condone the People's use of defendant's post-arrest silence against him, I conclude that the error was harmless, for the introduction of that evidence was not the likely source of his conviction.  Rather, it was the highly persuasive and admissible proof of defendant's guilt that ultimately led to the verdict here.  Furthermore, I find defendant's remaining contentions to be either unpreserved or lacking in merit.  Accordingly, I respectfully dissent and vote to affirm the Appellate Division's order.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and a new trial ordered.  Opinion by Judge Fahey.
Chief Judge Lippman and Judges Read, Rivera and Stein concur.
Judge Abdus-Salaam dissents in an opinion in which Judge Pigott
concurs.


Decided April 7, 2015