This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 1
The People &c.,
            Respondent,
         v.
Gregory Vining,
            Appellant.

            Margaret E. Knight, for appellant.
            Ross D. Mazer, for respondent.

ABDUS-SALAAM, J.:

        The trial court did not abuse its discretion as a matter of law in admitting a phone call between defendant and his ex-girlfriend as an adoptive admission. Once the People satisfied the threshold evidentiary requirements for admissibility, the

- 1 -

call was properly placed before the jury to weigh its import and significance. That the call was recorded while defendant was incarcerated does not change our analysis.

I.

Defendant was charged with several counts of assault, trespass and criminal mischief, all arising out of incidents involving him and his ex-girlfriend. The proof at trial established that they had a tumultuous relationship. The People introduced evidence of separate crimes from different dates. One involved defendant purposefully breaking the victim's cable box and hitting her in the face; another involved him pushing her to the ground and stomping on her chest, ultimately breaking two of her ribs; and the third involved him entering her apartment without her permission and remaining until he was arrested. As the People conceded, the victim was not the most reliable witness. She had problems with alcohol and drugs, a criminal history which included violence toward other ex-partners, mental health issues related to depression and schizophrenia, and had, on more than one occasion, either lied to or been less than forthcoming with the police and the District Attorney's Office. She did not appear for her scheduled testimony at the start of trial and had to be forcibly brought to court in handcuffs. The jury was aware of these issues.

During the trial, the court, upon the People's application, allowed the prosecutor to play a telephone call made

from defendant to the victim while he was incarcerated. The People sought to introduce the call as an adoptive admission by silence, which defendant opposed. During the conversation, the victim repeatedly accused defendant of breaking her ribs. Defendant never denied the allegations, and instead gave non-responsive and evasive answers. For example, after she forcefully stated many times that he had broken her ribs and shown no sympathy, his response was "so I'm a threat to you?" When she said he needed time to think and change so he would not do this to anyone else, he responded by asking whether his brother had called her. They also discussed a potential jail sentence, when he accused her of "not caring" if he got "a year."

The trial court allowed defense counsel to craft a limiting instruction, and counsel offered the following, which the court read to the jury before the call was played and again during its final charge:

> I'm allowing the conversation into evidence for the limited purpose of having you determine if such failure to respond and to remain silent is indeed an admission, and if you so find, give such admission whatever weight you deem appropriate in determining its significance.
> In making this determination, you should apply the same tests you would use in your own everyday life in doing so.
> You may wish to keep in mind, one, an individual['s] silence may be attributable to his awareness that he is under no obligation to speak.
> Two: An individual's natural caution that arises from his knowledge that anything he says may be used against him.
> Three: An individual may refrain from

> speaking because he believes that efforts to
> exonerate himself under the circumstances
> would be futile.
> Now, to the extent that the telephone call
> references the potential jail sentence, the
> jury is to disregard that portion of the
> call.

The jury found defendant guilty of attempted assault in the third degree, assault in the third degree, criminal mischief in the fourth degree, and criminal trespass in the second degree. The Appellate Division modified the judgment in a manner not relevant to this appeal, and otherwise affirmed, holding that the trial court properly exercised discretion in admitting the call (126 AD3d 623 [1st Dept 2015]). A Judge of this Court granted defendant leave to appeal (26 NY3d 1093 [2015]), and we now affirm.

## II.

An adoptive admission occurs "when a party acknowledges and assents to something '*already* uttered by another person, which thus becomes effectively the party's own admission'" (People v Campney, 94 NY2d 307, 311 [1999], citing 4 Wigmore, Evidence § 1609, at 100 [Chadbourne rev]). Assent can be manifested by silence, because "a party's silence in the face of an accusation, under circumstances that would prompt a reasonable person to protest, is generally considered an admission" (Robert A. Barker & Vincent C. Alexander, Evidence in New York State and Federal Courts § 8:17 [2016]; see also People v Koerner, 154 NY 355, 374 [1897] ["If he is silent when he ought to have denied,

the presumption of acquiescence arises"]). We have also recognized that "an equivocal or evasive response may similarly be used against [a] party either as an adoptive admission by silence or an express assent" (Campney, 94 NY2d at 316 [Smith, J., dissenting], quoting 2 McCormick, Evidence, *op cit.*, § 262, at 176). Here, despite the dissent's characterization, defendant was not silent in the face of the victim's accusations. He gave "equivocal or evasive response[s]" (id.).

Though we recognize that evidence of a party's silence or evasiveness can have "minimal probative significance" and a "substantial" risk of prejudice (People v Conyers, 52 NY2d 454, 458-459 [1981]), our rules of evidence allow that "manifestations made in response or reaction to an accusatory overture, which may be generally inadmissible, may be received into evidence, nevertheless, to establish a relevant demonstrative response of the affected party" (Campney, 94 NY2d at 312). Further, the "danger" of the potential ambiguity of a party's silence is not as strongly implicated where, as here, "a verbalized response is involved, not a failure to speak" (id. at 313).[1]

---

[1]The dissent interprets our holding in Campney too narrowly. By stating that "[a]pplying standard principles, we conclude that the trial court appropriately permitted the jury to consider whether defendant adopted his accomplice brother's written statement" (Campney, 94 NY2d at 310), we did not hold that these "standard principles" should be limited solely to a case with the particular facts of a defendant adopting his accomplice brother's written statement, as the dissent here suggests. Instead, we apply these standard evidentiary principles to the facts before us, as we did in Campney, and conclude that the trial court

To use a defendant's silence or evasive response as evidence against the defendant, the People must demonstrate that the defendant heard and understood the assertion, and reasonably would have been expected to deny it (see People v Allen, 300 NY 222, 225 [1949]). As with almost all evidence, "[t]he determination whether a threshold foundation has been established for the admissibility of the declaration or manifested act is made by the trial court, in light of 'all the facts and circumstances surrounding the incident,' while the 'value or effect of this evidence' is weighed by the jury" (Campney, 94 NY2d at 312, quoting People v Ferrara, 199 NY 414, 430 [1910]). The threshold question of whether a defendant heard and understood another party's accusations involves a "factual and inferential weighing responsibility" for which "[t]he trial court is the proper forum" (id. at 312-313).

Here, it is clear that the trial court did not abuse its discretion as a matter of law when it made the threshold determination that defendant heard and understood the victim's accusations against him. The court properly concluded that the content of the conversation, itself, demonstrates that defendant both heard and understood what she was saying, but chose to give evasive and manipulative responses. This view is supported by the context of the call, where, in a domestic violence case,

---

similarly "appropriately permitted the jury to consider" whether defendant adopted the victim's statement.

defendant voluntarily contacted the victim in violation of an order of protection in an attempt to influence her to drop the charges against him. Once this foundation was established, it was proper for the call "to be placed before the jury so that the jury might weigh the import, along with its other instructions and responsibilities" (id. at 313).

Though we are mindful of case law suggesting that evidence of a defendant's silence "may have a disproportionate impact upon the minds of jurors" (Conyers, 52 NY2d at 459), here, we are satisfied that the jury was fully equipped to assess the significance and dynamics of this phone call. At the outset, during the call, defendant was not silent, but responded to the victim's accusations. Further, at trial, the jury heard evidence of the rocky relationship between them, and was aware of the allegations of domestic violence. In response, defendant attacked the victim's credibility and suggested she had a motive to lie. The jury knew that she had problems with alcohol and drugs, that she had mental health issues, and that she had been less than truthful about defendant's actions before. In this context, the jurors could, in the simple exercise of their common sense, understand the significance of the call.

Finally, defendant argues that it was error for the court to deny his request to redact that portion of the call which references, incorrectly, defendant's sentencing exposure. However, in this domestic violence case, the mention of a

potential prison term was inextricably intertwined with defendant's purpose of calling the victim to manipulate her to drop the charges against him ("Oh, so you don't care if I get a year?"). We conclude that the court did not abuse its discretion as a matter of law in declining to redact this portion of the call. And with respect to this issue, as with admission of the call, any potential prejudice was mitigated by the court's thorough limiting instruction, crafted by defense counsel.

### III.

Defendant and the dissent urge that despite our state evidentiary law's allowance of adoptive admissions, this call should not have been admitted because it was made while he was incarcerated. Because all of his calls were recorded and monitored by the Department of Correction, a reality he was aware of, he argues that this conversation was akin to silence in the face of interrogation. We decline to adopt this view. As we recently explained, "[d]efendant was not induced by any promise, or coerced by the Department, to call [the victim] and make statements detrimental to his defense. . . . [and] the mere act of recording is no different from an informer sitting mute, not provoking or prompting conversation but merely listening to a statement freely made" (People v Johnson, 27 NY3d 199, 206 [2016]). Notably, the adoptive admission from Campney was made in an interrogation room, in the presence of several police officers (though not in response to any question from an officer). Here,

defendant voluntarily contacted and engaged in a conversation with a civilian. That his evasive responses were made during a call while he was incarcerated does not render them the product of an interrogation or its functional equivalent. Under the circumstances of this case, where defendant voluntarily called his accuser in violation of an order of protection to persuade her to drop the charges, the call was not the product of interrogation or its functional equivalent. As always, "the trial judge's role as gatekeeper remains unchanged and necessary to ensure compliance with constitutional mandates and the usual rules of evidence and criminal procedure" (Johnson, 27 NY3d at 208).

IV.

We have considered defendant's remaining contentions and find them unpreserved. Accordingly, the Appellate Division order, insofar as appealed from, should be affirmed.

People v Vining

No. 1

RIVERA, J.(dissenting):

I disagree with the majority that defendant, while a pretrial detainee in custody on Rikers Island who was informed both of his <u>Miranda</u> rights and that his telephone calls were routinely recorded by law enforcement, acquiesced to his intimate partner's accusations during a monitored conversation because he failed to deny her statements. We have long recognized that an accused's pretrial silence is generally prejudicial and inadmissible. Yet, the trial court below erroneously admitted into evidence, as an adopted admission by silence, a recording of the Rikers Island telephone call between defendant and the victim. The circumstances of defendant's detention do not justify an inference of defendant's acquiescence, and the use of the recording here is nothing more than an improper attempt to allow

- 1 -

a jury to infer an admission from the silence of a defendant
where such silence has no probative value (see generally People v
De George, 73 NY2d 614 [1989]; People v Conyers, 52 NY2d 454
[1981]). The majority's reasoning is contrary to both our law and
principles of fairness because any inference of an admission from
an inmate's silence during these recorded conversations is
presumptively unsound, and therefore I dissent.

According to well-established state evidentiary rules,
the People generally may not use either in its case-in-chief or
for impeachment a defendant's pretrial silence, meaning a
defendant's failure to speak or to assert affirmatively innocence
in the face of inquiry by law enforcement (People v Rutigliano,
261 NY 103, 107 [1933]; Conyers, 52 NY2d at 459).[*]  This
proscription on the use of silence recognizes that "a defendant's
silence is generally ambiguous and 'of extremely limited
probative worth'" (People v Williams, 25 NY3d 185, 191 [2015],

---

[*]The majority seems to misapprehend our case law on this
point by suggesting that adopted admissions by silence should be
treated differently than adopted admissions by elusive non-
responses (majority op at 5). Our court has long held that the
touchstone of the adopted admission by silence jurisprudence is
the "failure to deny, or to make immediate positive denials" when
faced with accusation (see People v Allen, 300 NY 222, 226
[1949]; see also People v Williams, 25 NY3d 185, 189, 193-194
[2015] [holding that it was error for the prosecutor to invite
jurors to consider defendant's failure to deny an accusation as
evidence of guilt]). Accordingly, the People sought admission of
this evidence as an adopted admission by silence and the trial
court admitted it as such. Therefore, despite the majority's
assertion to the contrary (majority op at 5), defendant's elusive
or non-sequitur responses to the victim's accusations constitute
"silence."

citing Rutigliano, 261 NY at 106-107). Silence is especially weak evidence of guilt because a defendant may stand mute in the face of a direct accusation for a number of reasons unrelated to actual criminal culpability (Conyers, 52 NY2d at 458).  For example, a defendant may feel no need to respond to what defendant maintains is an unsupported, baseless allegation for which denial would be futile; a defendant may be uncertain what to say and fear any response will be misinterpreted and used against them; a defendant may distrust law enforcement; or, a defendant may simply choose to invoke the constitutional right to remain silent (id.).  Yet, "there is a substantial risk that jurors might 'construe such silence as an admission and . . . draw an unwarranted inference of guilt'" (Williams, 25 NY3d at 191, quoting Conyers, 52 NY2d at 458-459). This rule is not predicated on any misconduct by law enforcement, but reflects the commonsense view that, under these circumstances, pretrial silence lacks probative value and the potential for prejudice, as outlined above, outweighs any probative worth of the evidence (Conyers, 52 NY2d at 459).

These same concerns are no less relevant when a defendant is an inmate and well-aware that the government is monitoring a recorded conversation with a witness or codefendant, obviating any expectation of privacy while affirming the fear of self-incrimination (see Rutigliano, 261 NY at 105-106, citing Commonwealth v McDermott, 123 Mass 140 [1877] and McCarthy v

United States, 25 F2d 298 [6th Cir 1928]).  Whether a law enforcement official asks the question, or is merely listening to another's accusation, a defendant's silence is ambiguous and prejudicial (see e.g. People v Koerner, 154 NY 355, 375-376 [1897] [remitting for a new trial when the trial court allowed evidence of a witness's accusation to law enforcement in the presence of the defendant but, under the circumstances, the defendant would not naturally have protested]).

The entirely separate evidentiary doctrine upon which the majority relies, the hearsay exception for adoptive admissions, cannot supplant the prohibition against the admission of a defendant's pretrial silence.  Here, the trial court's admission of defendant's post-accusatory, pretrial silence in response to allegations made in a recorded Rikers Island phone call as direct evidence of guilt violated state evidentiary law, and the inquiry ends there.

Nevertheless, even under the adopted admission exception to hearsay, it was error to admit the recorded conversation. "[A]ccusatory statements, not denied, may be admitted against the one accused, as admissions but only when the accusation was 'fully known and fully understood' by defendant, and when defendant was 'at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement by his remaining silent'" (People v Allen, 300 NY 222,

225 [1949], quoting Koerner, 154 NY at 374 and People v Conrow, 200 NY 356, 367 [1911]; see also People v Campney, 94 NY2d 307, 311-312 [1999]).  The circumstances must be "such as would properly or naturally call for some action or reply from [persons] similarly situated" (Koerner, 154 NY at 374).  Silence is not assent "unless the statements were such as to properly call for a response" (id.).  Application of the rule in criminal cases "is to be applied with careful discrimination" as "'[r]eally it is the most dangerous evidence'" (id.).  As the Court explained more than a century ago, this evidence "should always be received with caution, and ought not to be admitted unless the evidence is of direct declarations of a kind which naturally call for contradiction, or some assertion made to a party with respect to [the party's] rights, in which by silence [the party] acquiesces" (id. at 374-375).  Where the circumstances are such that an inference of acquiescence cannot be drawn, as in where the evidence belies just such inference, the statements do not fall within the rule and their admission is error (Conrow, 200 NY at 367, citing People v Kennedy, 164 NY 456 [1900], People v Smith, 172 NY 210 [1902], and People v Cascone, 185 NY 317 [1906]).

Here, the circumstances not only do not establish tacit acquiescence, but they also contradict any such inference.  At the time of the telephone call, defendant was a pretrial detainee on Rikers Island, and there is no dispute that he had been

advised of his right to remain silent under <u>Miranda v Arizona</u> (384 US 436, 467-468 [1966]).  Defendant had access only to telephones monitored by the New York City Department of Correction (DOC).  There can be no question that defendant was made aware that his calls were monitored and could be made available to the District Attorney's Office upon request for use in his prosecution.  This Court recently described how Rikers detainees are notified in writing and by audio telecommunications that a call on a Rikers telephone is not private (<u>see</u> <u>People v Johnson</u>, 27 NY3d 199, 203 [2016]).  The Inmate Handbook provided to all persons upon admission to Rikers Island states "that calls may be recorded and/or monitored" (<u>id.</u>).  The signs posted near the Rikers' telephones warn: "Inmate telephone conversations are subject to electronic recording and/or monitoring in accordance with [DOC] policy. An inmate's use of institutional telephones constitutes consent to this recording and/or monitoring" (<u>id.</u>).  A detainee using the telephone will hear a recorded advisement that "this telephone call may be recorded and monitored" (<u>id.</u>).

Furthermore, attorneys are well aware of the Rikers' telephone monitoring and use of recorded conversations in prosecutions and for plea bargaining purposes, and advise detainees accordingly.  Indeed, the very same District Attorney's Office that prosecuted defendant and appears in the instant appeal, represented in <u>Johnson</u> that defendants should be assumed to understand that they are being monitored by law enforcement:

"this type of evidence collection has been so well documented that it blinks reality to assume that defendants are not informed by their attorneys, at arraignments, that their unprivileged conversations will be recorded by DOC and provided to the prosecutor upon request" (Brief for Respondent in Response to Amicus Curiae, People v Johnson, 27 NY3d 199 [2016], at 4).

Given defendant's awareness of his rights under Miranda and the multiple Rikers' warnings, an inference that defendant adopted the victim's accusatory statements is unjustified. A detainee who is informed that he has a right to remain silent before law enforcement and that all telephone statements are recorded and may be used against the detainee by the District Attorney would understand that a "verbalized response" –- not silence –- is a perilous course, placing any defense at risk. The natural reaction under these circumstances is to maintain silence, not to deny and contradict the accusations (see Conyers, 52 NY2d at 458; see also Williams, 25 NY3d at 191). As the District Attorney in Johnson recognized: "[g]iven the notices that the prisoners signed, read on the wall and heard as they made their telephone calls, it is clear that far from taking secretive action to elicit incriminating statements, DOC took overt steps that would actually deter the prisoners from making such statements" (Brief for Respondent, People v Johnson, 27 NY3d 199 [2016], at 41 [emphasis added]). To avoid the use of incriminating evidence, a defendant should "refrain from

discussing the case over the telephone with anyone but [defense counsel]" (id. at 43).  The concurring opinion in Johnson also noted that the People's alternative was "essentially, don't talk to anyone other than your attorney about anything related to your case unless you want the prosecutor to know about it" (Johnson, 27 NY3d at 211).  The District Attorney, and the majority, cannot ignore when a defendant comports with this advice.

The majority's analysis relies on a misapplication of this Court's reasoning in People v Campney (94 NY2d 307 [1999]) and recharacterizes in sweeping language the Court's narrow holding, which was limited to the use of circumstantial evidence to infer a defendant's adoption of an accomplice's written confession.  Campney neither involved a defendant's silence, nor sanctioned the routine use of evidence as an adoptive admission where a defendant says nothing.  Rather, the case stands for the proposition that circumstantial evidence of a defendant's conduct and speech may support an inference that the defendant has adopted inculpatory statements (id. at 313).  The trial court admitted circumstantial evidence to prove that the defendant had read his brother's written and signed statement to police confessing to the crime (id. at 312).  After the brother gave the police a verbal statement, he asked to speak with defendant and the police left the two alone in an interrogation room for 10-15 minutes (id.).  When the police returned, they observed defendant holding the written statement (id.).  When an officer asked the

brother if he was ready to sign the statement, the brother asked the defendant what he should do, and the defendant responded, "you might as well sign it, you already told them all about what happened" (id.). The Court affirmed the admission of defendant's exclamation to his brother and the written statement as an adoptive admission (id.). The Court concluded based on the circumstantial evidence that the lower court "had enough before it to deduce that defendant had read or been informed of the contents of the statement, understood its implications, and affirmatively adopted the statement as his own" (id. at 313).

In reaching the holding in Campney, the Court expressly distinguished the jurisprudence on acquiescence by silence because the "defendant explicitly manifest[ed] an awareness of a statement and acceptance of the import of its contents" (id. [emphasis in original]). The adoptive admission was justified because the dangers highlighted in prior cases and associated with acquiescence by silence are not present "where a verbalized response is involved, not a failure to speak" (id.). Here, however, the trial court admitted the Rikers telephone call based on defendant's silence, not a verbalized response acknowledging the accusations or suggesting an adoption of the alleged wrongdoing. Thus, Campney does not support the majority's analysis. Indeed, it reinforces our long standing recognition that evidence of a defendant's silence is of no probative value, while being prejudicial and inherently ambiguous.

The trial court's error in admitting the telephone conversation as a tacit admission was not harmless, particularly because the recording also contained a prior consistent statement of a victim whose credibility was the primary focus of the case. "An error of law may be found harmless where 'the proof of the defendant's guilt, without reference to the error, is overwhelming' and where there is no 'significant probability . . . that the jury would have acquitted the defendant had it not been for the error'" (People v Crimmins, 36 NY2d 230, 241-42 [1975]).  An error is typically harmless when the challenged evidence was not the People's key piece of evidence (see People v Arafet, 13 NY3d 460, 468 [2009]).

Here, where the jury acquitted defendant of certain charges based on the victim's testimony, the evidence of defendant's guilt was not overwhelming.  The medical evidence placed the injury as having occurred within the three weeks before the victim went to the hospital, which did not contradict defendant's claim that another boyfriend of the victim caused the injury.  However, most damaging to the People's case was the credibility of the victim, their key witness, who, in the words of the prosecutor, was "a disaster."  Defense counsel impeached the victim by highlighting her prior inconsistent statements, drug addiction, and prior convictions for violence against other intimate partners.  In summation, the prosecutor asked the jury not to rely alone on the victim, an obvious concession to the

weakness of the People's case. "I know [the victim] is a disaster. I know that. However, I am not asking you to just rely on her. She has a lot of issues but I'm not just asking you to rely on her in this case . . . ."  The prosecutor, recognizing that a defendant's silence when accused of wrongdoing is powerful, expressly advocated that the jury rely on the defendant's failure to speak against the accusation as proof of his guilt.  The prosecutor further argued that defendant's silence while being recorded established his guilt because anyone would have spoken out under those circumstances: "[E]ach inmate is put on notice that their calls are recorded. There are signs posted near all of the telephones that say they are recorded. If you knew that you were being recorded and you were innocent, wouldn't that be all the more reason for you to deny it? . . . He couldn't deny it to her because she was there. Because she was there when he did that to her."  Thus, although the majority maintains that defendant's awareness that his calls were monitored is irrelevant (majority op at 6-7), the prosecutor used this fact persuasively before the jury.

This was a case of intimate partner violence with no witness to the assault, so the case turned on who the jury believed (e.g. People v Delamota, 18 NY3d 107, 116 [2011]). Where the victim's credibility was suspect, the medical evidence established a three week window for the assault, and the prosecutor's summation advocated guilt based on defendant's

silence, the proof of guilt was not overwhelming and a significant probability exists that the jury would have acquitted the defendant had the court not erroneously admitted evidence of the telephone call -- a call which contained a prior consistent statement used to bolster the victim's credibility.  I would reverse the Appellate Division's order affirming defendant's conviction.

As this case illustrates, it is inherently unfair to inform a Rikers Island detainee that telephone calls are being monitored by the government and may be used as evidence against the detainee by the prosecution, only to penalize the detainee who elects not to speak during a recorded telephone call.  Now, despite this Court's continual acknowledgment of the limited probative value of a defendant's silence in these circumstances, and the inherent prejudice that may result from admitting evidence of a defendant's silence, the majority penalizes defendant for choosing not to speak, a conclusion not supported by our law or notions of fairness.

I dissent.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order, insofar as appealed from, affirmed.  Opinion by Judge Abdus-Salaam.  Judges Stein, Fahey and Garcia concur.  Judge Rivera dissents in an opinion in which Chief Judge DiFiore concurs.  Judge Wilson took no part.

Decided February 14, 2017