People v Chapman (2020 NY Slip Op 02330)





People v Chapman


2020 NY Slip Op 02330


Decided on April 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 23, 2020

108844

[*1]The People of the State of New York, Respondent,
v
Olaijaide Chapman, Also Known as Buddha and Buddha Luv, Appellant.

Calendar Date: February 11, 2020

Before: Egan Jr., J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Lucas G. Mihuta, Albany, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered June 22, 2016, upon a verdict convicting defendant of the crimes of attempted murder in the first degree, conspiracy in the second degree (two counts), attempted murder in the second degree and assault in the first degree (two counts).
Defendant was charged in an eight-count indictment with attempted murder in the first degree, conspiracy in the second degree (two counts), attempted murder in the second degree, assault in the first degree (two counts) and attempted robbery in the first degree (two counts) arising from allegations that he hired two individuals to shoot and rob the victim. Following a jury trial, defendant was convicted of all charges except the attempted robbery charges. Defendant was sentenced to concurrent prison terms, the greatest of which was 25 years to life. Defendant appeals.
Defendant argues that the verdict was against the weight of the evidence as there was no independent witness testimony except for the coconspirators who, he contends, significantly contradicted one another. He further argues that the corroborating evidence established a very weak circumstantial case. In determining whether a verdict is supported by the weight of the evidence, we must first consider whether a different verdict would have been unreasonable and, if it would not, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v Lang, 164 AD3d 963, 966 [2018]). "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]; see People v Jones, 166 AD3d 1394, 1395 [2018], lv denied 33 NY3d 950 [2019]). "The corroborating proof does not need to demonstrate [the] defendant's guilt; instead, when read with the [coconspirators'] testimony, the proof makes it more likely that the defendant committed the offense, and thus tends to connect him [or her] to it" (People v Fields, 160 AD3d 1116, 1117 [2018] [internal quotation marks, brackets and citations omitted], lv denied 31 NY3d 1116 [2018]).
As relevant here, for a defendant to be found guilty of attempted murder in the first degree, the People have to prove that the defendant, "[w]ith intent to cause the death of another person," attempted to "cause[] the death of such person or a third person" and did so by "procur[ing the] commission of the killing pursuant to an agreement with a person other than the intended victim to commit the same for the receipt, or in expectation of the receipt, of anything of pecuniary value" (Penal Law §§ 110.00, 125.27 [a] [vi]). "[A] conviction for attempted murder in the second degree requires the People to prove that, with intent to cause the death of another, the defendant engaged in conduct that tended to effect the commission of that crime" (People v Demellier, 174 AD3d 1120, 1121 [2019], lv denied 34 NY3d 980 [2019], citing Penal Law §§ 110.00, 125.25 [1]). "A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he [or she] agrees with one or more persons to engage in or cause the performance of such conduct" (Penal Law § 105.15). "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). "'Serious physical injury' means a physical injury which creates a substantial risk of death" (Penal Law § 10.00 [10]), and "'[d]angerous instrument' means any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]; see People v Pine, 126 AD3d 1112, 1114 [2015], lv denied 27 NY3d 1004 [2016]). "As relevant to accessorial liability, 'when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he or she solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct'" (People v Trappler, 173 AD3d 1334, 1335 [2019], lv denied 34 NY3d 985 [2019], quoting Penal Law § 20.00 [brackets and citation omitted]).
The evidence at trial revealed that defendant had been shot by the victim two years earlier. The People's theory of the case was that, in retaliation, defendant solicited the participation of two coconspirators to shoot and rob the victim. Both coconspirators testified that, at first, they did not think that defendant was serious. However, after he repeated the solicitation and then offered them "a couple thousand dollars," they agreed to rob and kill the victim. One of the coconspirators contacted the victim and arranged to meet him under the guise of purchasing tickets for an event. After purchasing the tickets, one of the coconspirators shot the victim in the head. They both averred that, the following day, defendant delivered payment — although a lesser amount than promised — to one of the coconspirators. Although the coconspirators pointed the finger at each other for the actual shooting of the victim, their accounts of the meetings with defendant, his offer to pay them to shoot the victim and their testimony that they were paid $500 were substantially similar.
In addition, the neurosurgeon who treated the victim testified that the victim required immediate life-saving surgery due to traumatic wounds to his brain, right eye and facial bones. The neurosurgeon also testified that, as a result of the shooting, the victim sustained extensive damage to the right side of his brain, lost his right eye, is presently unable to communicate and suffers from seizures. Other evidence consisted of defendant's own tweets and text messages between himself and the coconspirators, the pinger account set up on the telephone of one of the coconspirators and the surveillance video of defendant going to one of the coconspirators' houses the night of the shooting. Viewing the evidence in a neutral light, a different verdict would not have been unreasonable if the jury had declined to credit the testimony of the coconspirators given the inconsistencies and conflicts between them, including who shot the victim (see People v Maschio, 117 AD3d 1234, 1236 [2014]). Nevertheless, we find that there was sufficient corroborating evidence to support the accomplice testimony and, deferring to the jury's credibility determinations, that the verdict is supported by the weight of the evidence (see People v Slaughter, 150 AD3d 1415, 1418 [2017]).
Defendant further argues that County Court erred in admitting a redacted video of his police interrogation in which he remained silent, as it was highly prejudicial and violated state evidentiary law. We agree. Defendant moved to suppress his statements made during his videoed interrogation by the police. Following a combined Huntley/Wade/Dunaway hearing, County Court found that defendant's statements were knowingly, voluntarily and freely made. However, County Court precluded the People's use of the video on the ground that the prejudicial impact of the video far outweighed its probative value, as, during the course of the interview, defendant "was essentially unresponsive verbally to questions posed" and the line of questioning "effect[ed] an impermissible burden shifting the obligation on defendant." County Court also denied the People's request to reconsider the use of the video a few months later. However, at a later hearing, the People raised the issue of presenting a redacted version of the video, and the court changed its earlier ruling. As a result, the redacted video was ultimately admitted into evidence during the People's case-in-chief and was the last piece of evidence shown to the jury before the People rested their case. County Court failed to issue the jury a curative instruction relating to the video.
"It is a well-established principle of state evidentiary law that evidence of a defendant's pretrial silence is generally inadmissible" (People v Williams, 25 NY3d 185, 190 [2015] [citation omitted]). There are many reasons why an individual may choose not to speak to the police; however, there is a substantial risk that jurors might construe such silence as an admission and draw an unwarranted inference of guilt (see id. at 191). Here, the admitted video consists of the police recounting their case against defendant, including reading his texts aloud and being met largely, if not completely, with silence. Defendant is shown slouching, with an ankle shackle securing him to the chair, and he is dressed in a hooded sweatshirt with oversized sweatpants worn in a manner so as to expose his underwear. His attitude appears to be dismissive and, at one point, he laughs in response to police questioning. Throughout the video, defendant makes no inculpatory statements. Both detectives who appear in the video were presumably available to testify and, in fact, one of them did testify.
Allowing evidence of defendant's selective silence was highly prejudicial because there was a significant risk that the jurors deemed defendant's failure to answer the police officer's questions to be an admission of guilt (see id. at 194). Given its highly prejudicial nature and that it contained little to no probative value, we agree with defendant that County Court erred in allowing the redacted video to be shown to the jury (see id. at 193-194; People v Conyers, 52 NY2d 454, 460 [1981]). This error was compounded by the People's use of the video during summation, wherein the prosecutor highlighted and commented upon defendant's silence during the police interrogation. In doing this, the People improperly shifted the burden to defendant (see People v Rupnarine, 140 AD3d 1204, 1205 [2016]; People v Wright, 133 AD3d 1097, 1097-1098 [2015]).
Where, as here, the error is nonconstitutional in nature, we must determine whether it was harmless (see People v Saxe, 174 AD3d 958, 961 [2019]). "[A]n error is harmless if the proof of [the] defendant's guilt is overwhelming and there is no significant probability that the jury would have acquitted [the] defendant had the error not occurred" (People v Williams, 25 NY3d at 194). Because the proof was mostly circumstantial and there were numerous inconsistences between the testimony given by the coconspirators, it is certainly possible that the jury would have acquitted defendant had it not viewed the video. In addition, the proof of defendant's guilt was not overwhelming. As such, we cannot deem the error to be harmless and the judgment must be reversed (see id.).
Defendant's remaining contentions are rendered academic by our determination.
Egan Jr., J.P., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for further proceedings not inconsistent with this Court's decision.