People v Grady (2024 NY Slip Op 06628)

People v Grady

2024 NY Slip Op 06628

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

113066
[*1]The People of the State of New York, Respondent,
v
Neshad Grady, Also Known as Moo Moo, Appellant.

Calendar Date:November 13, 2024

Before:Aarons, J.P., Pritzker, Ceresia, McShan and Mackey, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Erin N. LaValley of counsel), for respondent.

McShan, J.
Appeals (1) from a judgment of the Supreme Court (Roger D. McDonough, J.), rendered January 10, 2020 in Albany County, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree, and (2) from a judgment of said court, rendered January 10, 2020 in Albany County, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the second degree.
In November 2018, defendant was charged by indictment with one count of murder in the second degree and one count of criminal possession of a weapon in the second degree stemming from a July 2018 shooting in the City of Albany. Defendant was also indicted for criminal possession of a weapon in the second degree (count 3) stemming from a separate incident in November 2018. Following a jury trial on counts 1 and 2, defendant was convicted as charged. Defendant subsequently pleaded guilty to count 3 and was thereafter sentenced, as a second violent felony offender, on both the jury verdict and the subsequent guilty plea. As to the jury verdict, defendant was sentenced to a prison term of 25 years to life for murder in the second degree and a concurrent prison term of 15 years, to be followed by five years of postrelease supervision, for criminal possession of a weapon in the second degree. As to the plea, defendant was sentenced to a prison term of 10 years, to be followed by five years of postrelease supervision, to run concurrently to the sentence on the jury verdict. Defendant appeals.[FN1]
We affirm. Defendant argues that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence, primarily contending that the People failed to establish his identity as the perpetrator of the shooting beyond a reasonable doubt, which in turn demonstrates a lack of evidence that he possessed a loaded firearm. Relevant here, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). "A person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" outside of their home or business (Penal Law § 265.03 [3]). "[A]s an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Shabazz, 211 AD3d 1093, 1095 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]); accord People v Alexander, 231 AD3d 1310, 1311 [3d Dept 2024]).
The evidence at trial established that, shortly after midnight on the night of the shooting, defendant was present in the convenience store of a gas station located at the corner of Quail Street and Clinton Avenue, adjacent to the site of the shooting. Footage from a City-owned camera that was [*2]set up at the intersection shows the victim in his vehicle pulling into the gas station, where he briefly stopped at a pump without exiting. Meanwhile, surveillance footage from the gas station combined with the aforementioned footage on the City-owned camera show an individual dressed in the same attire as defendant leave the parking lot and look back at the victim's vehicle momentarily before entering a house that belonged to a member of defendant's family. At that point, the video footage depicts the victim pulling out of the gas station and turning onto Clinton Avenue and then onto Quail Street. The victim's cousin testified that he was standing on Quail Street when he observed the victim's vehicle approaching, at which point he flagged the victim down and they engaged in a brief conversation while he stood on the passenger side of the vehicle. The video footage shows that, just before the victim stopped his vehicle, an individual wearing the same attire as defendant walks out of the home of defendant's family member. According to the cousin, he observed an individual approaching the vehicle and, before the cousin could warn the victim, the individual began firing a weapon into the vehicle, prompting the cousin and other bystanders to flee. The cousin identified defendant at trial as the shooter, stating that he knew him from the neighborhood. The cousin had also made a previous identification of defendant to law enforcement from a photo array that was introduced into evidence. After the shooting, the perpetrator fled through an alley located between the parking lot of the gas station and the home of defendant's family member. The forensic evidence at trial established that the victim suffered three gunshot wounds during the encounter, two of which were minor and the third, which perforated his lung and aorta causing a blood clot in his chest, proved fatal. Law enforcement also recovered shell casings near the victim's vehicle, but the weapon used in the shooting was never found.
Based upon our review, we find that, "when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that the shooter's identity was sufficiently proven to be defendant" (People v Slivienski, 204 AD3d 1228, 1234 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]). The various different video recordings introduced at trial placed defendant near the scene and, coupled with the testimony of the victim's cousin identifying defendant as the shooter, was sufficient to meet the People's burden to establish defendant's identity as well as the fact that he possessed a loaded firearm during the encounter (see People v Calafell, 211 AD3d 1114, 1117 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]; People v Williams, 182 AD3d 776, 778 [3d Dept 2020], lv denied 35 NY3d 1071 [2020]). As to defendant's contention that the evidence against him was largely circumstantial beyond the unreliable testimony of the victim's cousin, that fact reasonably [*3]allows for a different verdict, thus satisfying the first step in our weight of the evidence review (see People v Terry, 196 AD3d 840, 846 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Malloy, 166 AD3d 1302, 1307 [3d Dept 2018], affd 33 NY3d 1078 [2019]). However, defendant does not suggest that the cousin's testimony was incredible as a matter of law, and the various factors implicating his credibility — including, among other things, that his testimony and cooperation with law enforcement was compelled pursuant to a material witness warrant, that the People had offered relocation assistance and that he was related to the victim — were fully explored at trial and placed squarely before the jury for its consideration. Further, the jury had the opportunity to assess the deficiencies in the People's case that defendant now highlights on appeal, including the lack of DNA evidence tying defendant to the crime and the possibility that the weapon used in the shooting may have been used in a separate robbery that did not involve defendant. Accordingly, giving deference to the jury's credibility determinations and "weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn" from the various forms of evidence admitted at trial, we conclude that the jury's verdict reflecting that defendant was the shooter and in possession of a loaded firearm is not contrary to the weight of the evidence (People v Gertz, 204 AD3d 1166, 1167 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1070 [2022]; see People v Nellis, 217 AD3d 1056, 1059 [3d Dept 2023]; People v Smith, 174 AD3d 1039, 1043 [3d Dept 2019], lv denied 35 NY3d 1097 [2020]).
Defendant also contends that the People improperly presented evidence of defendant's pretrial silence during a recorded interview with law enforcement. Defendant acknowledges, however, that his contention is unpreserved (see People v Clarke, 110 AD3d 1341, 1345 [3d Dept 2013], lv denied 22 NY3d 1197 [2014]), and asks, among other things, that we deem his counsel ineffective based upon the failure to lodge this specific objection to the admission of the recording. As to the underlying merits of that contention, "[i]t is a well-established principle of state evidentiary law that evidence of a defendant's pretrial silence is generally inadmissible" (People v Williams, 25 NY3d 185, 190 [2015]) due in large part to the "substantial risk that jurors might construe such silence as an admission and draw an unwarranted inference of guilt" (People v Chapman, 182 AD3d 862, 865 [3d Dept 2020]). After defendant was read and voluntarily waived his Miranda rights, detectives questioned him for approximately three hours. During the time periods identified by defendant in his brief,[FN2] the two detectives conducting the interview generally engaged in several well-established interviewing tactics, including various attempts to build rapport [*4]with defendant by expressing understanding for his circumstances and sympathy for his potential motives for committing the shooting. That theme is consistent throughout the entire interview, during which defendant provided an inculpatory admission that he was the individual inside the convenience store and was generally responsive to the detectives inquiries, but otherwise consistently denied any knowledge of or involvement with the shooting (see People v Brown, 140 AD3d 1740, 1741 [4th Dept 2016], lv denied 28 NY3d 1026 [2016]; compare People v Chapman, 182 AD3d at 866). To this end, it is apparent that the moments depicting defendant's silence that appear in the recording are generally brief and, contextually, are precipitated by the interviewing officers asking questions, providing various narratives of the events from that evening, showing defendant images or video footage or encouraging him to tell the truth. More significantly, the record establishes that the People did not emphasize defendant's silence during their case-in-chief, and the People's brief reference in summation to defendant's demeanor during the interview does not indicate that the People were attempting to highlight or infer that defendant had refused to answer any questions from the detectives (compare People v Williams, 25 NY3d at 192; People v Conyers, 52 NY2d 454, 458 [1981]; People v Chapman, 182 AD3d at 866). Accordingly, through that lens, we do not find that counsel's failure to object to the introduction of any portion of defendant's recorded interview on the grounds of selective silence rendered his representation ineffective (see People v Johnson, 225 AD3d 927, 935-936 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; People v Rivera, 212 AD3d 942, 949 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]; see also People v Jenkins, 198 AD3d 488, 489 [1st Dept 2021], lv denied 37 NY3d 1146 [2021]).[FN3]
Finally, we are unpersuaded that defendant's sentence is unduly harsh or excessive. Considering defendant's criminal history, his failure to demonstrate any remorse for his criminal behavior and the violent nature of the crime, we decline his invitation to modify his sentence (see People v Burton, 215 AD3d 1054, 1064 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v McGill, 207 AD3d 996, 997 [3d Dept 2022], lv denied 39 NY3d 987 [2022]).
Aarons, J.P., Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the judgments are affirmed.

Footnotes

Footnote 1: Although defendant's notice of appeal encompasses the judgments of conviction regarding both the jury verdict and the guilty plea, he has abandoned any challenge to the judgment of conviction stemming from the guilty plea by failing to raise any contentions related thereto in his brief (see People v Shuler, 231 AD3d 1285, 1286 [3d Dept 2024]).

Footnote 2: Although the People represent that only one segment of the interview identified by defendant was shown to the jury, that is not entirely clear from the record. Certain portions of the redacted recording, which was admitted in its entirety, were published at two different points during trial. The first instance in which the recording was published is accompanied by a clear reference to the time frame of the recording being played. However, the second time that the recording was published is less clear as to how much of the recording was played. Specifically, although there is a clear indication as to when the video was started and stopped, the witness examination that ensues between those points suggests that the recording was paused at various intervals and, to that end, is unclear as to whether any portions of the recording were skipped. In any event, reviewing each of the claimed time frames identified by defendant that fall within those outer limits, we find no merit to his contention.

Footnote 3: Defendant does not contend that any other aspect of his representation was deficient and, based upon our review, we are satisfied that counsel's efforts, as a whole, "were more than sufficient to establish that defendant received meaningful representation" (People v Mercer, 221 AD3d 1259, 1260 n [3d Dept 2023], lv denied 41 NY3d 1003 [2024]).